### *In re* DANIELS ESTATE

Docket No. 311310. Submitted June 11, 2013, at Lansing. Decided June 25, 2013, at 9:00 a.m.

Tonya Asbury, the decedent Richard J. Daniels' biological daughter, petitioned the Arenac Probate Court to be appointed personal representative of her father's estate, which the court, Richard E. Vollbach, Jr., J., granted. Jamie Leonard thereafter alleged that he was decedent's son and requested to be appointed personal representative of the estate. Following a hearing, the court concluded that Leonard and decedent had a mutually acknowledged parent-child relationship and that he was decedent's natural child pursuant to MCL 700.2114(1)(b)(*iii*). The court granted Leonard's petition to remove Asbury as the personal representative of the estate and Leonard was appointed the successor personal representative. Asbury appealed.

The Court of Appeals *held*:

1. MCL 700.2114(1)(b)(*iii*) provides that if a child is born out of wedlock, a man is considered to be the child's natural father for purposes of intestate succession if the man and child have: (1) a mutually acknowledged relationship of parent and child, (2) that began before the child became 18, and (3) that continued until terminated by the death of either. The plain language of the statute indicates that a man considered to be a child's natural father is someone who is regarded, deemed, believed, supposed, or thought of as the child's natural father. The statutory provisions under which a man is considered a child's natural father for purposes of intestate succession, MCL 700.2114(1)(b)(*i*) – (*vi*), do not require an underlying and preliminary determination that the child is the father's biological child. In this case, the probate court correctly determined that Leonard was not required to prove he was decedent's biological child before presenting evidence that he had a mutually acknowledged parent-child relationship for purposes of intestate succession under MCL 700.2114(1)(b)(*iii*); Asbury did not challenge the probate court's determination that Leonard presented sufficient evidence to establish that decedent was Leonard's natural father for purposes of MCL 700.2114(1)(b)(*iii*).

2. MCR 7.211(C)(8) provides that a request for sanctions for a vexatious appeal must be made by motion; raising the issue in a brief on appeal is insufficient to request sanctions. In this case, sanctions were not allowed because Leonard failed to file a motion separate from the appeal and to provide appropriate legal authority.

Affirmed.

DESCENT AND DISTRIBUTION — INTESTATE SUCCESSION — CHILDREN BORN OUT OF WEDLOCK — NATURAL FATHER — MUTUALLY ACKNOWLEDGED PARENT-CHILD RELATIONSHIP.

Under MCL 700.2114(1)(b)(*iii*), if a child is born out of wedlock, a man is considered to be the child's natural father for purposes of intestate succession if the man and child have: (1) a mutually acknowledged relationship of parent and child, (2) that began before the child became 18, and (3) that continued until terminated by the death of either; the plain language of the statute indicates that a man considered to be a child's natural father is someone who is regarded, deemed, believed, supposed, or thought of as the child's natural father; the statutory provisions under which a man is considered a child's natural father for purposes of intestate succession, MCL 700.2114(1)(b)(*i*) – (*vi*), do not require an underlying and preliminary determination that the child is the father's biological child.

Tonya Asbury *in propria persona*.

*Garner F. Dewey* for Jamie Leonard.

Before: OWENS, P.J., and GLEICHER and STEPHENS, JJ.

PER CURIAM. Petitioner, Tonya Asbury, appeals as of right the probate court's order, which removed her as personal representative of the Richard J. Daniels estate and replaced her with respondent, Jamie Leonard. We affirm.

The decedent, Richard Daniels, died on April 13, 2012. Asbury is the decedent's biological daughter and was the initial personal representative. Leonard filed a petition alleging that he was decedent's son and requesting that he be appointed the personal representa-

tive. The probate court held an evidentiary hearing to determine: (1) whether Leonard was an heir within the meaning of MCL 700.2114(1)(b)(*iii*); and (2) whether to replace Asbury as the personal representative of the decedent's estate.

At the hearing, the evidence established that Leonard was born while the decedent and Leonard's mother were cohabiting; the two were subsequently married. Leonard's birth certificate does not indicate the name of his father, but Leonard testified that the decedent was his father and that he believed he was the decedent's biological child. In addition, respondent Ronda Custer, the decedent's live-in girlfriend, testified that the decedent had introduced Leonard as his son and that Leonard referred to the decedent as "dad." She said that she had lived with the decedent from about 2001 until his death and that during that time the decedent had never indicated that there was not a parent-child relationship between him and Leonard. The decedent allegedly told Leonard that it did not matter that the certificate was blank because Leonard was his son.

Both Asbury and her mother testified that the decedent had raised Leonard like he was his son, and Asbury also testified that Leonard called the decedent "dad." However, she "truly and wholly" believed that Leonard was not the decedent's biological child. She testified that the decedent never referred to Leonard as his biological child and that several family members had told her that Leonard was not the decedent's child. Further, Asbury's mother testified that the decedent once told her that Leonard was not his biological child. To determine paternity, a DNA test was conducted; at the time of the hearing the results were still pending.

At the conclusion of the hearing, the probate court did not find that Leonard was the decedent's biological

child, but concluded that "the relationship, that the elements, as set forth by the statute have been satisfied in terms of determining that Mr. Leonard is the natural child of Mr. Daniels" because all the witnesses, including Asbury's,

> confirm[ed], unequivocally, that the decedent and Mr. Leonard have mutually acknowledged a relationship of parent and child that began, indeed, from the time that Mr. Leonard was a young child right through the death of the decedent. That fact is, and has not been refuted in any way, shape, or form, by any of the witnesses.

The probate court then granted the petition to remove Asbury as the personal representative and Leonard was appointed as the successor personal representative. Asbury appealed.

Asbury does not contest that there was sufficient evidence to establish that the decedent and Leonard had a mutually acknowledged relationship for the requisite time period. Instead, she argues that to establish a parent-child relationship pursuant to MCL 700.2114(1)(b)(*iii*), the court must first find that the man and the child have a biological relationship. Accordingly, we must interpret under what circumstances a person may be declared an heir pursuant to MCL 700.2114(1)(b)(*iii*), which is an issue of first impression.

"To determine the statute's intent, the specific language of the statute must be examined." *In re Turpening Estate*, 258 Mich App 464, 465; 671 NW2d 567 (2003). "In construing a statute, this Court should give every word meaning, and should seek to avoid any construction that renders any part of a statute surplus or ineffectual." *Id.* "[T]o discern the Legislature's intent, statutory provisions are *not* to be read in isolation; rather, context matters, and thus statutory provisions are to be read as a whole." *Robinson v City of Lansing*,

486 Mich 1, 15; 782 NW2d 171 (2010). Provisions not included by the Legislature should not be included by the courts. *Mich Basic Prop Ins Ass'n v Office of Fin & Ins Regulation*, 288 Mich App 552, 560; 808 NW2d 456 (2010).

MCL 700.2114 provides in relevant part:

(1) Except as provided in subsections (2), (3), and (4), for purposes of intestate succession by, through, or from an individual, an individual is the child of his or her natural parents, regardless of their marital status. The parent and child relationship may be established in any of the following manners:

(a) If a child is born or conceived during a marriage, both spouses are presumed to be the natural parents of the child for purposes of intestate succession. A child conceived by a married woman with the consent of her husband following utilization of assisted reproductive technology is considered as their child for purposes of intestate succession. Consent of the husband is presumed unless the contrary is shown by clear and convincing evidence. If a man and a woman participated in a marriage ceremony in apparent compliance with the law before the birth of a child, even though the attempted marriage may be void, the child is presumed to be their child for purposes of intestate succession.

(b) If a child is born out of wedlock or if a child is born or conceived during a marriage but is not the issue of that marriage, a man is considered to be the child's natural father for purposes of intestate succession if any of the following occur:

\* \* \*

(*iii*) The man and child have established a mutually acknowledged relationship of parent and child that begins before the child becomes age 18 and continues until terminated by the death of either.

Asbury argues that a probate court must first determine that the child attempting to establish the parent-child relationship is a biological child before the court may then consider evidence of the mutually acknowledged relationship. This argument is inconsistent with the language of the statute.

MCL 700.2114(1)(b) provides that "[i]f a child is born out of wedlock . . . a man is considered to be the child's natural father for purposes of intestate succession" if any of the circumstances in subsections (*i*) through (*vi*) apply. The word "considered" is not defined in the statute. If a word is undefined by the statute, it must be given its plain and ordinary meaning. *Brackett v Focus Hope, Inc*, 482 Mich 269, 276; 753 NW2d 207 (2008). This Court may consult a dictionary if the Legislature has not provided a definition for a word used in a statute. *Johnson v Pastoriza*, 491 Mich 417, 436; 818 NW2d 279 (2012). According to *Random House Webster's College Dictionary* (1997), "consider" means "to regard as or deem to be" or "to think, believe, or suppose." Thus, a man "considered" to be a child's natural father is someone who is regarded, deemed, believed, supposed, or thought of as the child's natural father. Therefore, the plain language of the statute contemplates that, in some situations, a man may not *be* the child's biological father, but he will nevertheless *be considered* the child's natural father.

MCL 700.2114(1)(b)(*iii*) provides that a man is considered a child's natural father if "[t]he man and child have established a mutually acknowledged relationship of parent and child that begins before the child becomes age 18 and continues until terminated by the death of either." Nothing in the text of this section suggests that the man must have a biological relationship with the child. Instead, this section requires (1) a mutually

acknowledged relationship of parent and child, (2) that the relationship was established before the child becomes age 18, and (3) that the relationship continues until either the man or the child dies. Asbury essentially requests that this Court insert the word "biological" into the statute so that it reads, in effect: "the man and *his biological* child have established a mutually acknowledged relationship of parent and child that begins before the child becomes age 18 and continues until terminated by the death of either." Because that interpretation is contrary to the plain language of the statute, we must reject it.

Moreover, the other five subsections of MCL 700.2114(1)(b) also contain circumstances that do not require an underlying finding that the decedent is the child's biological father. MCL 700.2114(1)(b)(*i*) provides that a man is considered the child's natural father if "[t]he man joins with the child's mother and acknowledges that child as his child by completing an acknowledgment of parentage as prescribed in the acknowledgment of parentage act, 1996 PA 305, MCL 722.1001 to 722.1013." Nothing in the Acknowledgement of Parentage Act requires that the man completing the acknowledgement form actually be the child's biological father. See *id.* Indeed, MCL 722.1007(g) expressly provides that the acknowledgement form must include notice that signing the form waives the following:

> (*i*) Blood or genetic tests to determine if the man is the biological father of the child.

> (*ii*) Any right to an attorney, including the prosecuting attorney or an attorney appointed by the court in the case of indigency, to represent either party in a court action to determine if the man is the biological father of the child.

> (*iii*) A trial to determine if the man is the biological father of the child.

Thus, the Acknowledgement of Parentage Act does not prohibit a child from being acknowledged by a man who is not his or her biological father. By extension, MCL 700.2114(1)(b)(*i*) does not require an underlying finding that the decedent is the child's biological father.

MCL 700.2114(1)(b)(*ii*) provides that a man is considered a child's natural father if "[t]he man joins the mother in a written request for a correction of certificate of birth pertaining to the child that results in issuance of a substituted certificate recording the child's birth." Pursuant to MCL 333.2831(b):

> The state registrar shall establish a new certificate of birth for an individual born in this state when the registrar receives the following:
>
> ※　※　※
>
> (b) A request that a new certificate be established and the evidence required by the department proving that the individual's paternity has been established.

Thus, MCL 700.2114(1)(b)(*ii*) similarly does not require an underlying finding that the decedent is the child's biological father.

MCL 700.2114(1)(b)(*iv*) provides that a man is considered the child's natural father if "[t]he man is determined to be the child's father and an order of filiation establishing that paternity is entered as provided in the paternity act, 1956 PA 205, MCL 722.711 to 722.730." MCL 722.717(1) provides:

> (1) In an action under this act, the court shall enter an order of filiation declaring paternity and providing for the support of the child under 1 or more of the following circumstances:
>
> (a) The finding of the court or the verdict determines that the man is the father.

(b) The defendant acknowledges paternity either orally to the court or by filing with the court a written acknowledgment of paternity.

(c) The defendant is served with summons and a default judgment is entered against him or her.

Thus, under the Paternity Act, a man who is not the biological father of a child can nevertheless have an order of filiation entered against him that would declare him the child's father. Therefore, MCL 700.2114(1)(b)(*iv*) does not require an underlying finding that the decedent is the child's biological father.

MCL 700.2114(1)(b)(*v*) provides that a man is considered the child's natural father if "[r]egardless of the child's age or whether or not the alleged father has died, the court with jurisdiction over probate proceedings relating to the decedent's estate determines that the man is the child's father, using the standards and procedures established under the paternity act, 1956 PA 205, MCL 722.711 to 722.730." As indicated, the procedures under the Paternity Act allow a man who is not the biological father of a child to have an order of filiation entered against him that would declare him the child's father. Therefore, by extension, MCL 700.2114(1)(b)(*v*) does not require an underlying finding that the decedent is the child's biological father.

Finally, MCL 700.2114(1)(b)(*vi*) provides that a man is considered the child's natural father if "[t]he man is determined to be the father in an action under the revocation of paternity act." The Revocation of Paternity Act, MCL 722.1431 *et seq.*, provides methods that allow an individual to set aside an acknowledgement of parentage, MCL 722.1437, or an order of filiation, MCL 722.1439. It also governs actions to determine that a

presumed father is not a child's father, MCL 722.1441, which does focus on the biological father.

Thus, examining MCL 700.2114(1)(b) as a whole, there is nothing in the statute that requires a preliminary finding that a child is the biological child of the decedent before subsections (*i*) through (*vi*) may be considered and adding such a requirement would be inconsistent with the nature and purpose of the statute.

Asbury asserts that *In re Quintero Estate*, 224 Mich App 682; 569 NW2d 889 (1997) supports her position. However, that case is inapposite. First, it dealt with a challenge brought under the Revised Probate Code, MCL 700.1 *et seq.*, which was repealed and replaced with the Estates and Protected Individuals Code (EPIC), MCL 700.2101 *et seq. In re Quintero Estate*, 224 Mich App at 685. More important, it dealt with intervenors who asserted that they were the decedent's children as the result of an extramarital affair between their mother and the decedent, but who were born during their mother's marriage to her former husband. *Id.* at 684-685. On the basis of statutory language not present in the current statute, the trial court concluded that only the intervenors' parents (their mother and her former husband) had standing to challenge the presumption of parentage. *Id.* at 685. It then concluded that, because the former husband was not present to disprove his presumption of paternity, and their mother was estopped from denying paternity on the basis of a divorce judgment that had named the intervenors as the former husband's children, the intervenors could not be heirs of the decedent. *Id.* This Court upheld the trial court's conclusion, holding that "because of the presumption of paternity, intervenors lack standing to disprove the paternity of their presumed parents, and [their mother] is precluded by her judgment of divorce,

which has res judicata effect with respect to the presumption of paternity by [her former husband]." *Id.* at 689.

In this case, Leonard was born while his mother and the decedent were living together prior to their marriage and his mother was not married to someone else. Thus, the MCL 700.2114(1)(a) presumption does not apply. Furthermore, MCL 700.2114 does not include a provision similar to MCL 700.111(2), which limited the pool of individuals who could challenge the presumption of parentage. Indeed, as discussed, the presumption that a child born during a marriage is the issue of that marriage is but one method of proving the existence of a parent-child relationship.

Asbury also argues that Leonard could hypothetically find his biological father and inherit from that estate, meaning that he would violate the statutory prohibition against allowing a stepchild to inherit. The problem with Asbury's argument is that it does not account for the circumstances where a man is "considered" or "presumed" to be a child's natural parent even if he is not actually the child's biological parent.

Finally, Leonard has requested sanctions for a vexatious appeal. However, as this Court has previously held:

Sanctions requested for a vexatious appeal are governed by MCR 7.216(C)(1). MCR 7.216(C)(1) indicates that a motion for sanctions must be filed pursuant to MCR 7.211(C)(8). And MCR 7.211(C)(8) provides that a request for sanctions must be made by motion; a brief on appeal is insufficient to request sanctions. There is no indication that [the defendant] has separately filed a motion for sanctions at the appellate level. Moreover, no appropriate legal authority was cited to support sanctions. Therefore, [the] request for sanctions is denied.

[*The Meyer & Anna Prentis Family Foundation v Barbara Ann Karmanos Cancer Institute*, 266 Mich App 39, 60; 698 NW2d 900 (2005).]

Likewise, in this case Leonard has neither filed a motion separate from the appeal brief nor provided appropriate legal authority, thereby requiring denial of the request.

Affirmed. Leonard, as the prevailing party, may tax costs. MCR 7.219(A).

OWENS, P.J., and GLEICHER and STEPHENS, JJ., concurred.