*In re* CASEY ESTATE

Docket Nos. 314209 and 314728. Submitted May 7, 2014, at Detroit. Decided July 31, 2014, at 9:05 a.m.

Everett and Mary Alice Casey had two children during their marriage, Kathryn and Kirk Casey. Mary Alice predeceased Everett. In 1997 Everett executed a will and trust, naming in his trust Kathryn and Kirk as his only children. After Everett died in 2012, Kathryn filed a petition for probate in the Oakland County Probate Court and sought to admit Everett's 1997 will to probate. Gerald Rossi was named special personal representative of the estate. Renee and Bruce Keene filed demands for notice and objections to the petition for probate, claiming that Everett was their biological father. Renee and Bruce alleged that Everett and their mother, Corinne Keene, had had an extramarital affair while Corinne was married to Robert Keene, the man listed as Renee and Bruce's father on their birth certificates. Robert had died in 1966 and Renee and Bruce had not sought to establish Everett's paternity until the present probate action. The probate court, Linda S. Hallmark, J., granted Kathryn's motions for summary disposition on the grounds that Renee and Bruce were not interested persons, the 1997 will was valid and unrevoked, and there was no genuine issue of material fact that Everett did not gift the contents of a certain safe to Bruce. The court admitted the will to probate and ordered an evidentiary hearing to determine the amount of money that had been in Everett's safe at the time of his death. Renee and Bruce each appealed. The Court of Appeals consolidated the appeals.

The Court of Appeals *held*:

1. The Estates and Protected Individuals Code, MCL 700.1101 *et seq.*, governs the question presented in this case.

2. For purposes of intestate succession, a child is to take from his or her natural parent regardless of their marital status. MCL 700.2114(1).

3. The parents of children born during a marriage are presumed to be the natural parents of those children. MCL 700.2114(1)(a).

4. If a child is born or conceived during a marriage but is not the issue of that marriage, the court can determine whether the alleged father is the child's natural one under the procedures of the Paternity Act, MCL 722.711 *et seq*. MCL 700.2114(1)(b)(*v*).

5. The Legislature's use of "if" in the first and second clauses of MCL 700.2114(1)(b) sets forth the alternative conditions under which the rest of that subsection is premised. Absent satisfaction of one of these conditions, the remainder of subsection (1)(b) does not come into play.

6. MCL 700.2114(5) provides the exclusive means by which the presumption of natural parenthood set forth in MCL 700.2114(1)(a) may be overcome. It specifies that the only person holding the right to challenge the presumption is the presumptive natural parent. The right to attempt to overcome the presumption ends when the presumed parent dies. Therefore, the exclusive right to disprove the presumption that Renee and Bruce are Robert's natural children has terminated.

7. Three elements must be satisfied for a gift to be valid. First, the donor must possess the intent to transfer title gratuitously to the donee. Second, there must be actual or constructive delivery of the subject matter to the donee, unless it is already in the donee's possession. Third, the donee must accept the gift. Delivery must be unconditional and must place the property within the dominion and control of the donee. An inter vivos gift must be fully consummated during the donor's lifetime and must invest ownership in the donee beyond the power of recall by the donor. Before his death, Everett not only retained control over the safe, but also retained the power of recall. There was no delivery of a gift to Bruce.

Affirmed.

SHAPIRO, J., concurring, concurred with the result and the reasoning of the majority but disagreed with the majority to the extent that the majority's decision may be read as turning upon a particular definition contained within a particular edition of a particular dictionary. In the absence of a legislative designation of a particular dictionary's use, it cannot be said that one dictionary is the best, let alone conclusive, determiner of legislative intent.

*Prince Law Firm* (by *Shaheen I. Imami* and *Amber N. Atkins*) for Kathryn Casey.

*Smith & Mabley, PLC* (by *John D. Mabley*), for Kirk Casey.

*LoPrete & Lyneis, PC* (by *Mary M. Lyneis* and *Jonathan R. Nahhat*), for Gerald Rossi, special personal representative of the estate of Everett R. Casey, deceased.

*Hubbell DuVall PLLC* (by *Clinton J. Hubbell* and *Dylan J. DuVall*) for Renee Keene.

Bruce Keene *in propria persona.*

Before: MURRAY, P.J., and JANSEN and SHAPIRO, JJ.

MURRAY, P.J. This is an inheritance dispute between the natural children of Everett and Mary Alice Casey, Kathryn and Kirk Casey, and Renee and Bruce Keene, who claim to be the offspring of Everett and their mother's (Corinne Keene) adulterous affair in the 1960s. Everett and Corinne were both married during their alleged affair. In these consolidated appeals, appellants, Renee and Bruce Keene, appeal as of right the order granting summary disposition in favor of appellee Kathryn Casey. Kathryn Casey filed three separate motions for summary disposition below and argued: (1) neither Renee nor Bruce were interested persons or heirs of the decedent, Everett; (2) the decedent's 1997 will is valid and unrevoked; and (3) the decedent did not gift the contents of the safe located at his company's office to Bruce before his death. Renee and Bruce challenge the probate court's determination that they are not interested persons or heirs of the decedent. Bruce also challenges the probate court's determination that the decedent did not gift the contents of his safe to him. We affirm.

I. FACTS AND PROCEEDINGS

The decedent, Everett Casey, and his wife, Mary Alice, who predeceased him, had two children during

their marriage, Kathryn and Kirk Casey. During the latter part of the decedent's lifetime, Bruce worked for the decedent's company, Precision Standard Inc. (PSI). In July 1997, the decedent executed a will and trust, naming in his trust Kathryn and Kirk as his only children.[1] After the decedent's death on March 24, 2012, Kathryn filed a petition for probate and sought to admit the decedent's 1997 will to probate. Renee and Bruce filed demands for notice and objections to the petition for probate, claiming that the decedent was their biological father. Renee and Bruce alleged that the decedent and their mother, Corinne Keene, had an extramarital affair while she was married to Robert Keene, the man listed as Bruce and Renee's father on their birth certificates. Robert Keene died in 1966, and Renee and Bruce did not seek to establish the decedent's paternity until the present action.

The probate court issued a thorough written opinion and order granting Kathryn's motions for summary disposition on the grounds that (1) Renee and Bruce were not interested persons, (2) the 1997 will was valid and unrevoked, and (3) no genuine issue of material fact existed that the decedent did not gift the contents of the safe to Bruce. The decedent's 1997 will was admitted to probate and the court ordered an evidentiary hearing to determine the amount of money in the decedent's safe at the time of his death.

With respect to the interested-person determination, the probate court ruled that MCL 700.2114(1)(b)(*v*) was inapplicable because the plain language of the statute requires an initial finding either that Renee and Bruce were born out of wedlock or that they were born or conceived during the marriage but were not the issue of

---

[1] The decedent's will left certain property to his children, but did not explicitly state their names.

the marriage before the court could make a natural-
parent determination under MCL 700.2114(1)(b)(v).
The court reasoned that because Corinne and Robert
Keene were married when Bruce and Renee were born,
Robert Keene is the presumed father and "there has
been no determination that the children were not an
issue of the marriage," and thus, Renee and Bruce were
not interested persons.

## II. ANALYSIS

### A. INTERESTED PERSONS

Renee and Bruce contend that the probate court
erred in its interpretation and application of MCL
700.2114(1)(b)(v) and improperly granted summary dis-
position in favor of Kathryn on this basis. This chal-
lenge involves questions of statutory interpretation and
standing, which we review de novo. *In re MCI Telecom
Complaint*, 460 Mich 396, 413; 596 NW2d 164 (1999);
*Mich Ed Ass'n v Superintendent of Pub Instruction*, 272
Mich App 1, 4; 724 NW2d 478 (2006). Additionally, this
Court reviews de novo a probate court's decision on a
motion for summary disposition. *Wortelboer v Benzie
Co*, 212 Mich App 208, 213; 537 NW2d 603 (1995). In
reviewing a motion brought under MCR 2.116(C)(5)
(regarding whether a party lacks the capacity to sue),
this Court considers the pleadings, depositions, admis-
sions, affidavits, and other documentary evidence sub-
mitted by the parties. *McHone v Sosnowski*, 239 Mich
App 674, 676; 609 NW2d 844 (2000). A motion under
MCR 2.116(C)(8) tests the legal sufficiency of the claim
as pleaded, and all factual allegations and reasonable
inferences supporting the claim are taken as true. *Id.*

"The paramount rule of statutory interpretation is
that we are to effect the intent of the Legislature."

*Omelenchuk v City of Warren*, 466 Mich 524, 528; 647
NW2d 493 (2002) (citation and quotation marks omit-
ted). "To do so, we begin with the statute's language. If
the statute's language is clear and unambiguous, we
assume that the Legislature intended its plain meaning,
and we enforce the statute as written." *PNC Nat'l Bank
Ass'n v Dep't of Treasury*, 285 Mich App 504, 506; 778
NW2d 282 (2009) (citation and quotation marks omit-
ted). "In construing a statute, this Court should give
every word meaning, and should seek to avoid any
construction that renders any part of a statute surplus
or ineffectual." *In re Turpening Estate*, 258 Mich App
464, 465; 671 NW2d 567 (2003). It is well established
that "to discern the Legislature's intent, statutory
provisions are *not* to be read in isolation; rather, context
matters, and thus statutory provisions are to be read as
a whole." *Robinson v City of Lansing*, 486 Mich 1, 15;
782 NW2d 171 (2010). Provisions not included by the
Legislature should not be included by the courts. *Mich
Basic Prop Ins Ass'n v Office of Fin & Ins Regulation*,
288 Mich App 552, 560; 808 NW2d 456 (2010).

At the time of the decedent's death in 2012, the
Estates and Protected Individuals Code (EPIC), MCL
700.1101 *et seq.*, was in effect, and accordingly governs
the question before us.[2] See *In re Adolphson Estate*, 403
Mich 590, 593; 271 NW2d 511 (1978) ("Determinations

---

[2] Throughout these proceedings the parties have operated under the
correct understanding that MCL 700.1105, which relates to intestate suc-
cession, applies to this issue despite the decedent's having a valid will at the
time of his death. That is because EPIC describes who is entitled to notice to
challenge a will, and the statutory definitions lead us to the intestate-
succession provisions of MCL 700.2114. Specifically, notice must be given to
all interested persons, MCL 700.1401, and interested persons is defined to
include a "child," MCL 700.1105(c), and child is in turn defined as "an
individual entitled to take as a child under this act by intestate succession
from the parent whose relationship is involved." MCL 700.1103(f). That
definition thus requires application of MCL 700.2114.

of heirs are to be governed by statutes in effect at the time of death, and an adoption statute in effect at the time of death is controlling.") (citation omitted). That statute defines "interested person"—the category of people entitled to notice of probate proceedings—to include a child or heir, among others. MCL 700.1105(c). Because Renee and Bruce claim to be interested persons as the biological children of the decedent, the parties focused their attention on MCL 700.2114, which sets forth the framework for establishing the parent-child relationship for purposes of intestate succession. That section provides, in relevant part:

> (1) Except as provided in subsections (2), (3), and (4), for purposes of intestate succession by, through, or from an individual, an individual is the child of his or her natural parents, regardless of their marital status. The parent and child relationship may be established in any of the following manners:
>
> (a) *If a child is born or conceived during a marriage, both spouses are presumed to be the natural parents of the child for purposes of intestate succession.* A child conceived by a married woman with the consent of her husband following utilization of assisted reproductive technology is considered as their child for purposes of intestate succession. Consent of the husband is presumed unless the contrary is shown by clear and convincing evidence. If a man and a woman participated in a marriage ceremony in apparent compliance with the law before the birth of a child, even though the attempted marriage may be void, the child is presumed to be their child for purposes of intestate succession.
>
> (b) If a child is born out of wedlock or *if a child is born or conceived during a marriage but is not the issue of that marriage,* a man is considered to be the child's natural father for purposes of intestate succession if any of the following occur:

*       *       *

(*v*) Regardless of the child's age or whether or not the alleged father has died, the court with jurisdiction over probate proceedings relating to the decedent's estate determines that the man is the child's father, using the standards and procedures established under the paternity act, 1956 PA 205, MCL 722.711 to 722.730.

\* \* \*

(5) Only the individual presumed to be the natural parent of a child under subsection (1)(a) may disprove a presumption that is relevant to that parent and child relationship, and this exclusive right to disprove the presumption terminates on the death of the presumed parent. [MCL 700.2114 (emphasis added).]

As a preliminary matter, we recognize that the statute clearly provides that, for purposes of intestate succession, a child is to take from his or her natural parent, "regardless of their marital status." MCL 700.2114(1). The statutory language also could not more clearly establish that the parents of children born during a marriage *are presumed* to be the natural parents of those children. MCL 700.2114(1)(a). The statute then provides that the parent-child relationship with *the alleged natural parent* can be established in a number of ways. Relevant to this case, the statute provides that (1) "if" a child is born or conceived during a marriage but is not the issue of that marriage, then (2) the court can determine whether the alleged father is the child's natural one under the procedures of the Paternity Act, MCL 722.711 *et seq.* MCL 700.2114(1)(b)(*v*). In other words, "if" a person can establish that he was born or conceived during a marriage but is not the issue of that marriage (and therefore has disclaimed that the *presumed natural father* is not the natural father), the court can then proceed to the next step of DNA testing under the Paternity Act to determine

whether the *alleged father* (here the decedent) is the natural parent of Renee and Bruce.

The Legislature's use of the word "if" at the start of the subsection and the relevant clause is critical. *The Random House Webster's College Dictionary* (2001) offers several definitions of "if," the more pertinent being: "1. in case that; granting or supposing that; on condition that[.]" See *Hottmann v Hottmann*, 226 Mich App 171, 178; 572 NW2d 259 (1997) (a dictionary definition is appropriately used to construe undefined statutory language according to common and approved usage).[3] Thus, the use of "if" in the first and second clauses of MCL 700.2114(1)(b) sets forth the alternative conditions upon which the rest of that subsection is premised. Absent satisfaction of one of those conditions, the remainder of subsection (1)(b) does not come into play.

Under these provisions, a presumption exists that Bruce and Renee are the children of Corinne and

---

[3] In response to our concurring colleague, we simply state that although there may be more than one dictionary definition of a term, this does not render the statute ambiguous, *Lash v Traverse City*, 479 Mich 180, 189 n 12; 735 NW2d 628 (2007), for when faced with multiple definitions the courts must look to the context in which the word is used in the statute before determining the correct definition to apply, *Feyz v Mercy Mem Hosp*, 475 Mich 663, 684 n 62; 719 NW2d 1 (2006). Both the state and federal courts long ago concluded that utilizing dictionaries is a proper and objective means to define undefined words, with the context of the word being important in those circumstances in which various definitions of the same word exist. See *Taniguchi v Kan Pacific Saipan, Ltd*, 566 US ___, ___; 132 S Ct 1997, 2002-2003; 182 L Ed 2d 903, 912-913 (2012) (canvassing numerous dictionaries for the common understanding of an undefined statutory term), *Spectrum Health Hosps v Farm Bureau Mut Ins Co*, 492 Mich 503, 516; 821 NW2d 117 (2012), and *Feyz*, 475 Mich at 684 n 62. In any event, the definition of "if" we utilize today is certainly a common and ordinary one as reflected in several different dictionaries. See, e.g., *The American Heritage College Dictionary* (1994) and *Oxford American Dictionary* (1980).

Robert Keene, as they were married when Bruce and Renee were conceived (a fact established by their birth certificates). MCL 700.2114(1)(a). Because of that undisputed fact, Renee and Bruce established that they were born during a marriage. But what of the proof that they were not the issue of that marriage? Bruce and Renee claim that DNA evidence purportedly showing that they are the biological children of the decedent accomplishes that task.

However, the plain language of MCL 700.2114(5) provides the exclusive means by which the presumption of natural parenthood set forth in MCL 700.2114(1)(a) may be overcome, and it specifies that the *only* person holding the right to challenge the presumption is the presumptive natural parent, and the right to attempt to overcome the presumption ends when the presumed parent is deceased. Here, that person is Robert Keene. However, since Robert Keene has already died, the *exclusive* right to disprove the presumption that Renee and Bruce are his natural children has terminated. Accordingly, Renee and Bruce do not satisfy the express criteria of MCL 700.2114(1)(b). To hold otherwise would effectively allow an additional method to rebut the presumption of paternity provided in subsection (5) and render the relevant portion of subsection (1)(b) superfluous. That we cannot do. *Turpening Estate*, 258 Mich App at 465.[4]

Before moving on, we make two additional points. First, appellants' reliance upon *In re Daniels Estate*, 301 Mich App 450, 453-454; 837 NW2d 1 (2013), is of no moment. In that case our Court ruled that MCL 700.2114(1)(b) did not first require an underlying find-

---

[4] Based on this conclusion, Renee and Bruce lack standing to challenge the admission of the decedent's 1997 will to probate. Kathryn's argument that this issue has been abandoned on appeal is therefore moot.

ing that a child is the biological child of the decedent before MCL 700.2114(1)(b)(*i*) through (*vi*) come into play. *Id.* at 459. That argument is not being made here. Moreover, the child in that case was undisputedly born out of wedlock. *Id.* at 452. Accordingly, one of the conditions of MCL 700.2114(1)(b) was satisfied before the Court proceeded to analyze MCL 700.2114(1)(b)(*i*) through (*vi*). In contrast, because Renee and Bruce cannot rebut the presumption of natural parentage of Robert Keene, we can proceed no further under subsection (1)(b). Our holding is fully consistent with *Daniels* and, just as importantly, the statute.[5]

Second, we reject Bruce and Renee's assertion that the subsection of the statute allowing for testing under the paternity act (MCL 700.2114(b)(*v*)) to determine who the natural parent is would have no meaning if there was an initial requirement to show (under MCL 700.2114(b)) that the child was born out of wedlock (which presumably is accomplished by DNA testing as it is under the paternity act). What that argument glosses over is the different purposes of each showing. It is one thing to prove that a child's presumed parent is not the natural parent; it is a wholly separate thing to prove that another person is the child's natural parent. These are separate issues, and our reading of the statute is that the Legislature has conditioned proof of the former as being required before a child can proceed to proof of the latter.

### B. GIFT

Finally, we reject Bruce's contention that a genuine issue of material fact exists regarding whether the

---

[5] The probate court should have relied exclusively on the statutory language, as the citation to *In re Quintero Estate*, 224 Mich App 682; 569 NW2d 889 (1997), was misplaced. See *In Re Daniels Estate*, 301 Mich App at 459.

decedent made an inter vivos gift of the contents of his safe to Bruce. Our review of this issue implicates MCR 2.116(C)(10). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). This Court reviews a "motion brought under MCR 2.116(C)(10) by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). Review is limited to the evidence that was presented to the probate court at the time the motion was decided. *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 475-476; 776 NW2d 398 (2009). "Summary disposition under MCR 2.116(C)(10) is appropriately granted if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Greene v A P Prod, Ltd*, 475 Mich 502, 507; 717 NW2d 855 (2006) (quotation marks and citations omitted). A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the nonmoving party, leaves open an issue upon which reasonable minds could differ. *Debano-Griffin v Lake Co*, 493 Mich 167, 175; 828 NW2d 634 (2013).

"[F]or a gift to be valid, three elements must be satisfied: (1) the donor must possess the intent to transfer title gratuitously to the donee, (2) there must be actual or constructive delivery of the subject matter to the donee, unless it is already in the donee's possession, and (3) the donee must accept the gift." *Davidson v Bugbee*, 227 Mich App 264, 268; 575 NW2d 574 (1997). "A gift *inter vivos* is not only immediate, but absolute and irrevocable." *In re Reh's Estate*, 196 Mich 210, 217; 162 NW 978 (1917). Delivery must be unconditional and must place the property within the dominion and con-

trol of the donee. *Osius v Dingell*, 375 Mich 605, 611; 134 NW2d 657 (1965). Additionally, an inter vivos gift "must be fully consummated during the lifetime of the donor and must invest ownership in the donee beyond the power of recall by the donor." *Id*.

Here, as the probate court found, Bruce's affidavit fails to establish delivery. Indeed, although Bruce claims the decedent provided him the combination to the safe and indicated that the contents of the safe belonged to him, it was the decedent who retained dominion and control over the safe and its contents. The safe was located in the decedent's office at PSI, a company exclusively owned by the decedent. In addition, the decedent retained control of the combination, which he could change at any time, thereby precluding Bruce's access to the safe's contents. This means the decedent retained not only control, but the power of recall. There was no delivery. *Id*.

Affirmed.

No costs will be allowed on appeal. MCR 7.219(A).

JANSEN, J., concurred with MURRAY, P.J.

SHAPIRO, J. (*concurring*). I concur with the majority's affirmance and reasoning. I write separately only to note my belief that this Court is capable of construing the meaning of the word "if" without consulting a lay dictionary. See *ADVO-Systems, Inc v Dep't of Treasury*, 186 Mich App 419, 424; 465 NW2d 349 (1990) ("recourse to the dictionary is unnecessary when the legislative intent may be readily discerned from reading the statute itself").

I do not disagree with the general principle that we may consult dictionaries as an aid in interpreting statutory language. See, e.g., *Hottmann v Hottmann*,

226 Mich App 171, 178; 572 NW2d 259 (1997). However, to the extent that the majority's decision may be read as turning upon a particular definition contained within a particular edition of a particular dictionary, I disagree. The Legislature does not have an official dictionary nor has it directed Michigan appellate courts to any particular dictionary or edition thereof. Accordingly, it is the responsibility of this Court, to the best of its ability and using all the available tools and data, to determine the Legislature's intent in using a certain word or phrase.

While it is proper that we consult both legal and lay dictionaries in the execution of that responsibility, we should not construe a particular definition in a particular edition of a particular dictionary as the definitive interpretation of the meaning of a statute or even of a particular word in that statute. Indeed, *once recourse to any aid*—including a dictionary—outside the bare legislative text, is deemed required, the statutory language cannot fairly be viewed as plain and unambiguous on its face and so must be interpreted in accordance with all the rules of statutory construction rather than only the one that allows consultation of a dictionary. Otherwise, we risk the possibility that a court may simply justify its own policy preferences by reference to a selected definition in a selected edition of a selected dictionary, followed by a claim that no further analysis of legislative intent is needed or even permitted. In the absence of a legislative designation of a particular dictionary's use, it cannot be said that one dictionary is the best, let alone conclusive, determiner of legislative intent, which, as always, is the indisputable touchstone of statutory interpretation. See Hoffman, *Parse the Sentence First: Curbing the Urge to Resort to the Dictionary When Interpreting Legal Texts*, 6 NYU J Legis & Pub Pol'y 401 (2003).