# STATE OF MICHIGAN

# COURT OF APPEALS

MARY S. ORLEBEKE,

        Plaintiff-Appellee,

v

TIMOTHY J. ORLEBEKE,

        Defendant-Appellant.

UNPUBLISHED
July 23, 2015

No. 325097
Kent Circuit Court
LC No. 05-011064-DM

Before: SERVITTO, P.J., and BECKERING and BOONSTRA, JJ.

PER CURIAM.

Defendant, Timothy Orlebeke, appeals as of right the November 25, 2014 order denying his motion to modify parenting time in regard to the minor children he shares with plaintiff, Mary Orlebeke. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

The parties, who had two minor children together, were divorced in 2007. The judgment of divorce initially granted parenting time to plaintiff, with defendant receiving alternating weekends as well as alternating mid-week visits. In September 2010, the trial court modified parenting time by ordering that each parent would have the children on alternating weeks, with parenting time for the non-custodial parent on Tuesday and Thursday nights from the time school was dismissed until 7:00 p.m. In 2012, following allegations by both parents that the other failed to adequately provide for the children's medical needs, the trial court awarded sole legal custody to defendant, based on a finding that plaintiff allowed one of the children to have too much of a particular medication, and because the parties were unable to get along with one another.[1]

On August 29, 2014, defendant moved for a modification of parenting time. He alleged that there was a change of circumstances and/or proper cause for the trial court to consider modifying parenting time because plaintiff allowed one of their children to use two inhalations or "puffs" of QVAR (an inhaled corticosteroid) twice daily, contrary to the prescription for that

---

[1] The trial court described the parties' relationship as "highly contentious," as is borne out by the sheer girth of the trial court record.

medication. Although in the past the child had been prescribed to take two puffs of QVAR twice daily, the child's QVAR prescription had been reduced from two daily two-puff doses (morning and evening) to one two-puff dose each morning. Defendant informed plaintiff of as much in an October 4, 2013 email, and plaintiff acknowledged receiving this email. However, according to defendant, plaintiff sent him an email on July 15, 2014, which defendant alleged led him to believe that plaintiff was continuing to administer QVAR to the child twice per day. That email stated:

> I'm very confused, as is [the child]. Today [the child] told me that you told him he's not supposed to be taking Qvar at night. He wasn't aware of this and neither was I. [The child] told me he was taking it at night at your house, as well as mine.
>
> [The child] is very aware and conscientious of his medications and dosages and was worried because he felt like he had done something wrong. I assured him he didn't and that you and I would work this out. Attached is the last email I received from you in regards to any changes to [the child's] medications. The email only mentions that [the child's] dosage amount of 80mg was reduced to 40mg, but that [the child] is to continue to take his medication morning and night. Knowing his dosage was reduced from 80 to 40mg, I would often confirm that when I picked up a refill.
>
> Since I don't go to the doctor's office and speak with the doctor, I rely solely on you for any information regarding changes in medications and dosages, so it's very important you communicate any changes to me. I know things get busy and you may have forgotten to inform me, but obviously this is important so please remember to keep me posted on medical changes.

At a November 19, 2014 evidentiary hearing[2], plaintiff admitted sending the above email, but denied that she allowed the child to take the medicine twice a day. She only allowed him to use it once per day, as directed. As to why she may have indicated that the child took the medication twice daily in her email, she explained that she was emotional, upset, and very confused when she sent it. She testified that immediately before she sent the email, the child, who was upset and crying, told her that defendant repeatedly asked him about the medication, and even though he was only taking the medication once a day, he told defendant that he took it twice a day. According to plaintiff, the child explained that he got confused when being questioned by defendant. Plaintiff testified that she wrote the email in an attempt to "get the attention off my kid and have [defendant] direct some dialogue with me." So, she decided to "write out exactly what was happening at the moment without thinking, what I assumed per what [the child] was saying." She testified that she was distraught, in part, because defendant

---

[2] Defendant's motion to modify parenting time was initially heard by a referee on September 5, 2014. The referee concluded that defendant's motion should be denied because it did not meet the threshold of showing a change of circumstances and/or proper cause under MCL 722.27(1)(c). Defendant objected to the referee's determination and requested a de novo review pursuant MCR 3.215(E)(4).

"constantly" criticized her parenting skills. She denied any allegation by defendant that she allowed the child to take too much QVAR or that she obtained too much QVAR and/or was stockpiling the medication.

In support of his allegation that plaintiff gave the child too much medication, defendant testified that plaintiff obtained more refills for QVAR than was necessary. He introduced evidence showing that she refilled or attempted to refill the prescription on September 24, 2013, December 19, 2013, February 12, 2014, May 25, 2014, and June 26, 2014.[3] According to defendant, each refill of the prescription contained 120 inhalations or puffs, which amounted to 60 doses for the child. He testified that the 60 doses in each refill were enough to provide one parent with a four-month supply of QVAR because the child was with each parent for approximately 15 days per month.[4] He believed that that plaintiff obtained more refills of QVAR than necessary, meaning that she was either stockpiling the medication or administering too much medication to the child. He estimated that she obtained approximately 16 months' worth of QVAR in a 9-month timeframe.

Charlie Clapp, the court-appointed guardian ad litem, reported that the child told him that he always received his medications properly and that he only took two puffs of QVAR in the morning. Clapp, like defendant, was concerned about the amount of QVAR refills that plaintiff ordered. He was also concerned about plaintiff's statements in the July 15, 2014 email.

On November 25, 2014, the trial court issued an opinion and order denying defendant's motion to change parenting time based on a finding that defendant failed to establish a change of circumstances or proper cause. The trial court found that defendant had not shown by a preponderance of the evidence that plaintiff improperly administered excessive amounts of QVAR to the child. In reaching that conclusion, the trial court relied in part on its finding that plaintiff's testimony that she properly administered the QVAR medication was credible. Although the trial court found troubling plaintiff's July 15, 2014 email, it found credible her testimony that she was confused about the medication issue after discussing the matter with her son, as well as her claim that she feels "extreme pressure as a result of the Defendant's constant criticism of her parenting skills," which caused her to send the email. The trial court noted that plaintiff's potentially having excessive QVAR in her possession "does not in and of itself mean she failed to properly administer the medication." Although the trial court found it to be a close call, it determined that defendant failed to establish by a preponderance of the evidence that plaintiff improperly administered QVAR to the child. The trial court noted that plaintiff's testimony was corroborated, in part, by Clapp's assertion that the child reported that he had been taking his medication as directed.

---

[3] Defendant testified that he "intercepted" the June 26, 2014 refill.

[4] Although not expressly stated, implicit in this testimony was that the child had separate inhalers at each parent's respective house.

## II. PROPER CAUSE OR CHANGE IN CIRCUMSTANCES

In regard to child custody and parenting time, all orders and judgments of the circuit court are to be affirmed unless the court made findings of fact against the great weight of the evidence or committed a palpable abuse of discretion or a clear legal error on a major issue. MCL 722.28; *Pickering v Pickering*, 268 Mich App 1, 5; 706 NW2d 835 (2005). "Under this standard, a reviewing court should not substitute its judgment on questions of fact unless the factual determination 'clearly preponderate[s] in the opposite direction.' " *Pierron v Pierron*, 486 Mich 81, 85; 782 NW2d 480 (2010), quoting *Fletcher v Fletcher*, 447 Mich 871, 878; 526 NW2d 889 (1994) (alteration in original). A custody or parenting-time order may only be modified after there has been "proper cause shown or because of change of circumstances . . . ." MCL 722.27(1)(c). The party seeking to amend a parenting-time order—in this case, defendant—bears the burden of establishing proper cause or a change of circumstances. *Kaeb v Kaeb*, __ Mich App __; __ NW2d __ (Docket No. 319574, issued March 12, 2015), slip op at 7.

On appeal, defendant argues that the trial court's finding that he had not shown by a preponderance of the evidence that plaintiff improperly administered excessive amounts of QVAR was against the great weight of the evidence. Specifically, defendant challenges the trial court's finding that plaintiff's testimony concerning whether she properly administered the QVAR medication was credible. He argues that her testimony was expressly rebutted in the following three ways. First, he argues that her testimony about how she sent the July 15, 2014 email immediately after talking to the child could not be true based on the parties' parenting-time schedule. Second, he claims that her testimony about being distraught and emotional when she sent the July 15, 2014 email was contradicted by her ability to include a different email as an attachment. Third, he claims that plaintiff's testimony concerning whether she properly administered QVAR to the child was contradicted by the fact that she obtained 16 months' worth of QVAR in a 9-month period, and by her testimony that she did not have a stockpile of the medication at the time of the November 19, 2014 evidentiary hearing.

"We defer to the trial court's credibility determinations given its superior position to make these judgments." *Shann v Shann*, 293 Mich App 302, 305; 809 NW2d 435 (2011). Nevertheless, as defendant points out, in *Bowers v Bowers*, 198 Mich App 320, 324; 497 NW2d 602 (1993), we held that in reviewing a trial court's factual findings in a child custody case under the great weight of the evidence standard, "a court may not immunize its findings from review by purporting to base them on pure credibility determinations in the face of other evidence." The holding in *Bowers* was based on *Beason v Beason*, 435 Mich 791, 804; 460 NW2d 207 (1990), where the Michigan Supreme Court applied the clearly erroneous standard to a trial court's factual findings in a divorce case, but stated that:

> This is not to suggest that the trial judge may insulate his findings from review by denominating them credibility determinations, for factors other than demeanor and inflection go into the decision whether or not to believe a witness. Documents or objective evidence may contradict the witness' story; or the story itself may be so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it. Where such factors are present, the court of appeals may well find clear error even in a finding purportedly based on a credibility

determination. [*Id.*, quoting *Anderson v Bessemer City, NC,* 470 US 564, 575; 105 S Ct 1504, 1512; 84 L Ed 2d 518 (1985).]

We have reviewed defendant's challenges to the credibility of plaintiff's testimony that she properly administered the QVAR medication and find that they do not demonstrate that plaintiff's testimony was contradicted by "[d]ocuments or objective evidence" or that her testimony was "so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it." See *Beason,* 435 Mich at 804. The parties' parenting-time schedule does not necessarily establish an inconsistency in plaintiff's testimony that she spoke with the child immediately before she sent an email to defendant on July 15, 2014. Defendant provides no evidentiary support for his contention that the parenting-time schedule made plaintiff's assertion that the child was with her immediately before she sent the email a "pure fabrication." While he cites the trial court's September 2010 parenting-time order, such order provides no indication of where the child would have been on July 15, 2014; it simply cites a generic parenting time schedule. The parenting-time schedule does not necessarily contradict plaintiff's testimony, nor does it make plaintiff's testimony inconsistent or implausible.

We also find no merit to defendant's assertion that plaintiff's testimony was rendered inherently implausible by the fact that she was able to attach an approximately 20-month-old email from defendant to her July 15, 2014 email. Aside from the fact that this alleged 20-month-old email does not appear in the record, we fail to see how plaintiff's ability to find one email and attach it to another email shows that she could not have been distressed, thereby rendering her testimony implausible or unbelievable. While defendant's argument suggests that attaching one email to another email is an extraordinary feat, we are not inclined to view it as such, nor are we inclined to agree with defendant's assertion that it constitutes a "compelling reason" to interfere with the trial court's credibility determination.

Further, we are not convinced that defendant's arguments concerning the number of QVAR refills plaintiff obtained necessarily renders her testimony so incredible that we should not defer to the trial court's credibility determination. We disagree with defendant's argument that it was an "inescapable fact" that plaintiff administered double doses of QVAR because she obtained a 16-month supply of QVAR in a 9-month period and she testified that she did not have a stockpile of QVAR at the time of the November 19, 2014 evidentiary hearing. While plaintiff obtained enough QVAR for her to properly administer 15 doses of QVAR per month for 16 months, there is no evidence in the record regarding how often defendant obtained QVAR for use when the parties' son stayed with him. Further, there is no evidence in the record regarding whether each parent had his or her own QVAR inhalers, or whether their son brought his QVAR inhalers with him when he moved from one parent to another.[5] In addition, defendant's

---

[5] If plaintiff's refills of the QVAR prescription provided enough QVAR for 240 daily doses, and both parents combined to use those doses at an approximate rate of 30 doses per month, those 240 doses would last 8 months. This would prevent plaintiff from obtaining a stockpile of QVAR despite refilling the medication four times in a nine-month period, even assuming plaintiff's proper administration of QVAR.

argument does not take into account any other explanations for the use of the QVAR, nor did he produce evidence that would foreclose any such explanations. For instance, the argument ignores that the QVAR prescription indicated that the child was to take extra doses when he was sick, which could have accounted for the need for additional medication. It also ignores the possibility of anything else contributing to plaintiff's need for refilling the QVAR prescription, such as a lost or damaged inhaler.

In conclusion, we defer to the trial court's finding that plaintiff's testimony that she properly administered the QVAR medication was credible. See *Shann*, 293 Mich App at 305. As noted by the trial court, this testimony was, at least in part, corroborated by Clapp's report to the court regarding the child's representations. The trial court's finding that defendant failed to establish a change of circumstances or proper cause for the modification of parenting time was not against the great weight of the evidence. See *Pierron*, 486 Mich at 85.

Plaintiff raises a request in her brief for actual costs and attorney fees from defendant for filing this appeal. Because plaintiff did not raise her request within a separate motion or cite authority in support, we deny the request. MCR 7.211(C)(8); *In re Daniels Estate*, 301 Mich App 450, 460-461; 837 NW2d 1 (2013).

Affirmed.


/s/ Deborah A. Servitto
/s/ Jane M. Beckering
/s/ Mark T. Boonstra