*In re* REH'S ESTATE.

REH *v.* ERTRACHTER.

1. APPEAL AND ERROR—BILL OF EXCEPTIONS—EVIDENCE.
   Where a bill of exceptions contains no testimony and only certain requests for findings and the findings and conclusions of the trial court, resort can only be had for the facts to such findings and to documentary evidence in the record.

2. SAME—CONCESSIONS OF COUNSEL.
   Questions urged on appeal which have been eliminated by concessions of counsel are not open for consideration on

appeal, where the trial court in its findings did not pass on such questions.

3. GIFTS—INTER VIVOS—WHAT CONSTITUTES.

A statement signed by a decedent that he was about to leave town and if anything should happen to him his wife should have his property is insufficient on its face to constitute a gift *inter vivos*, since it is upon condition, and such a gift must be not only immediate, but absolute and irrevocable.

4. SAME—CAUSA MORTIS—WHAT CONSTITUTES.

Where a decedent signed a statement that he was about to leave town for his health and in case anything should happen to him, as he was a sick man, his wife was the owner of everything they possessed, and delivered such statement, together with certain leases, bank books, and other papers, to his wife, and died eight days thereafter, such statement and contemporaneous facts stamped the transaction as a *donatio causa mortis*.

5. SAME.

It is not essential to a gift *causa mortis* that the donor be *in extremis* and that death is certain, but it is sufficient if he is apprehensive of death from present malady or imminent peril, as from a necessary surgical operation which he intends to voluntarily undergo in hope of relief.

6. SAME—LIMITATIONS—REAL PROPERTY.

A gift *causa mortis* is limited to personal property and does not include realty, and may be made without writings, provided the evidence of what is said and done establishes the requisites for its validity.

7. FRAUDS, STATUTE OF — DEEDS — SUFFICIENCY OF DESCRIPTION — LEASEHOLD INTERESTS.

A leasehold interest is within 3 Comp. Laws, § 9509 (4 How. Stat. [2d Ed.] § 11393; 3 Comp. Laws 1915, § 11975), providing that no estate or interest in lands other than leases for a term not exceeding one year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered, or declared, unless by act or operation of law, or by deed or conveyance in writing, subscribed by the party creating, granting, signing, surrendering, or declaring the same, or by some person thereunto by him lawfully authorized by writing.

8. GIFTS—CAUSA MORTIS—LEASEHOLD INTERESTS.

    A gift *causa mortis* cannot be made of a leasehold interest
    for a term of years.

9. DEEDS—EVIDENCE—PAROL EVIDENCE—SUFFICIENCY OF DESCRIP-
TION.

    A deed or conveyance in writing of an interest in land must
    be complete in itself and leave nothing resting in parol.

Error to Macomb; Tucker, J. Submitted January
16, 1917. (Docket No. 143.) Decided May 31, 1917.

Annie Reh, administratrix of the estate of Richard
M. Reh, deceased, filed her final account in the probate
court. From an order allowing said account, Toni
Ertrachter appealed to the circuit court, where a trial
was had before the court without a jury. The order
of the probate court was affirmed. Contestant brings
error. Reversed.

*Silas B. Spier* and *William F. Sawn,* for appellant.

*John A. Weeks* and *Charles H. Hummerich,* for ap-
pellee.

STEERE, J. The above-named Annie Reh filed her
final account as administratrix of her deceased hus-
band, Richard M. Reh, in the probate court of Macomb
county on August 3, 1914, which was allowed on Sep-
tember 29, 1914. An appeal was taken therefrom to
the circuit court by Toni Ertrachter, sister of de-
ceased, where a trial by jury was begun on May 21,
1915, continuing until May 26, when by agreement
of counsel proofs were closed, the jury discharged,
and the case submitted to the court for findings of
facts and conclusions of law thereon; written requests
for findings and conclusions being filed by counsel for
the respective parties.

Findings were first made and filed by the court on
July 6, 1915, in which the conclusion was reached that
the court was without jurisdiction in that proceeding

to try the title to the property in dispute, consisting of a lease for a certain hotel and the furniture it contained, for which reason the order of the probate court should be affirmed. Following requests by appellant for amended findings, and inferably before they had been passed upon by the court, counsel for appellee withdrew all jurisdictional objections which he had previously made and requested the court to "take jurisdiction of the whole matter and determine all questions involved." The court then proceeded with a further consideration of the case, and on March 6, 1916, filed amended findings of fact with conclusions of law, again sustaining the probate court under the facts found.

None of the oral testimony appears in the printed record. The lengthy requests for amended findings filed in behalf of appellant, composing nearly one-third of the record, indicate that considerable testimony was taken during the four days of trial before the proofs were closed as to detailed facts desired found, which were not touched upon by the court in its findings, either because not satisfactorily proven or deemed immaterial. The authenticated bill of exceptions, of which these requests appear to be a part, contains also the original and amended findings and conclusions of the court, certain exhibits, the pleadings, exceptions to refusal to find, to the findings made and conclusions of law, assignments of error, etc., concluding with the certificate of the trial judge that:

"The above bill of exceptions contains only so much of the testimony as is necessary to determine the questions of law involved."

In the absence of any testimony of the witnesses, the purpose of including these requests in the bill of exceptions is not clear. Of them the trial judge says in his amended findings:

"I can see no benefit to any one in traversing all of the statements in the voluminous requests for amended findings. There is but one question in the case as I see it, viz.: Did Mr. Reh transfer to his wife, Annie M. Reh, on September 4, 1913, title to the property in the Reh hotel, his lease of it, and his money in the banks?"

Under such a condition of the record, resort can only be had for the facts to the findings of the trial court and documentary evidence found in the record.

The statement of facts in appellant's brief drawn from the source, which is not questioned by appellee, fairly discloses the essential facts involved and nature of this controversy, which appears to center upon the significance of deceased's holographic effort of September 4, 1913. The statement is as follows:

"Richard M. Reh, on May 21, 1909, leased what was then known as the 'Hall Hotel property' in Mt. Clemens, Mich., at an annual rental of $1,800 per year. On April 14, 1911, he also leased certain other rooms in the building adjacent to and afterwards connected with said hotel property at an annual rental of $600 per year, and conducted the two leased properties as the Reh Hotel and Annex. The leases and the furniture in the hotel was the individual property of Mr. Reh. Mr. Reh's deposits in the banks with which he did business were made in his own name. One lot in the Wood subdivision, Mt. Clemens, inventoried in this estate, was individually owned by Mr. Reh. Mr. Reh and his wife, Annie Reh, owned jointly considerable real estate of value in the city, but outside of this real estate all the other property was owned in the sole name of Richard M. Reh.

"It appears that Richard M. Reh contemplated a trip to and did leave for Atlantic City, N. J., September 4, 1913; that before leaving he went into the Mt. Clemens Savings Bank and in the presence of the cashier, Mr. Edward A. Heine, executed the following document, viz.:

"'September 4, 1913.

"'I am going to leave town for my health. In case anything should happen to me as I am a sick man so my wife Annie Reh

is the owner of everything we possess and nobody else. This statement is signed by myself.

"'RICHARD M. REH.

" 'Subscribed and sworn to before me this 4th day of September, 1913.

" ' EDWARD A. HEINE, Notary Public.'

"This paper was Exhibit H in the trial of this cause in the circuit court, and is in Mr. Reh's own handwriting, and by the court was found to have been 'delivered to said Annie Reh on the same day together with the leases, bank books, and other papers.' He then departed for Atlantic City, where he died September 12, 1913, leaving surviving him his widow, Annie Reh, administratrix, and a sister, Mrs. Tonie Ertrachter, of Chicago, Ill., as his sole heirs at law. After his death, on November 10, 1913, Annie Reh sold the lease of and furniture in Hotel Reh and Annex to one Rebecca Malbin, receiving therefor the sum of $12,000, $6,000 of which was in cash, and a mortgage for the balance of $6,000, of which $2,000 has been since paid by said Rebecca Malbin. She executed this assignment individually and as administratrix of the estate of her husband. She also transferred the moneys belonging to Mr. Reh in said banks to accounts in her own name, and in his estate accounted only for the lot in the Wood subdivision, inventoried at $100."

In the original findings the court found and stated as follows:

"Counsel in open court conceded that the list of payments made by Mrs. Reh properly chargeable to the estate amounted to the sum of $2,709.16; that the widow's allowance made to her by the probate court are properly chargeable to the estate at $1,400; that the commission on the sale of the lease of the hotel should be charged, making a total charge against the estate and credit to her of $4,259.16.

"The other side conceded for the purpose of eliminating from consideration all question to the title to the cash in bank: An offset should be allowed against the sums due her of $3,916.27, leaving a net balance due Mrs. Reh of $342.89. This would leave the sole question to be determined in a proper proceeding the title to the leasehold interest in the hotel."

In the amended findings, after including in the "one question in the case as I see it" deceased's "money in the bank," the court further said and found: "The parties in open court agreed that there was a net balance due the administratrix, Mrs. Annie M. Reh, of $342.89, aside from the matter of the leasehold interest in the Reh Hotel and the furniture," and the latter the court passed upon, holding they were the property of Mrs. Reh under the writing of September 4, 1913, and what transpired in that connection.

Counsel for appellant now argue at length in their brief, with citation of decisions, "that there was no transfer of the rights or title to the commercial bank deposits of Mr. Reh to Mrs. Reh," citing 20 Cyc. p. 1239, and other authorities, to support the contention that the rule recognizing a valid gift of a savings account by delivery of the depositor's passbook does not apply to commercial accounts. It does not appear from the findings whether the bank accounts in question were commercial or savings, but it does clearly appear that the trial court did not pass upon them, for the reason that by concessions of counsel for the respective parties the question of title to cash in bank was eliminated, and the balance due administratrix was determined to be a stated amount, exclusive of the leasehold interest and furniture. We therefore cannot treat those questions as open for consideration by this court.

The court's findings of fact state that deceased delivered this paper of September 4th to his wife the same day in the presence of some friends at his hotel, and "at the same time he took from his safe and turned over to his wife the hotel leases, bank books, and some other papers." The contents of that paper and deceased's disposition of it on the day he drew and signed it are found by the trial court to clearly show that he "intended the instrument he executed

on September 4th as an assignment to his wife of all
his property," and the court concludes that "this gift
was perfected  *  *  *  by such manual delivery of
the property as was consistent with its nature," emphasized by the fact that this paper with his written
evidence of ownership, or title to, the property he
intended to and did give her were together placed
directly in her hands by him.

This paper, or "statement," as deceased designates
it, read independently of interpreting acts or circumstances, is an anomalous jumble of sentences and assertions difficult to legally define. Its import is in a
sense testamentary. If intended for and to be regarded as a will, it is imperfect and inoperative. On its
face it is not a gift *inter vivos,* for all language referring to property and which in any sense could be
claimed to express donation is introduced by the condition, "In case anything happens to me." A gift
*inter vivos* is not only immediate, but absolute and
irrevocable.

While not so stated in exact language, the paper as
a whole fairly implies that it was written in anticipation of the writer's death from the disorder then
upon him, in consequence of which he was "a sick
man" about to leave his home in search of health, and
for the purpose of protecting or providing for his
wife if his sickness proved fatal, as he feared, and
which in fact occurred eight days later. To that end
he lamely stated "so my wife Annie Reh is the owner
of everything we possess and nobody else." Fair construction of this language, under the circumstances
and in the connection found, would not limit it to only
meaning, or as intended to mean, that she owned what
she did own, or that she was the owner of all they
possessed before or when he wrote it, which he knew
was not true except as what he then might write and
do made it true. If, at the same time he delivered

this paper to his wife, he also made a legal delivery to her of the property in question in anticipation of death and with intent to absolutely vest control and dominion over the property in her, speaking at and from that time in connection with what he then did the statement was true. His intent, which is admittedly an important question in the case, was one of fact. The court has found as a fact that deceased intended to give this property to his wife and this writing to be an assignment of it to her. The court heard the testimony, which we infer from the time occupied in its taking was voluminous, and from that testimony, which is not before us, decided the fact.

We conclude that this paper of September 4th in connection with the contemporaneous facts found by the court stamps the transaction as a *donatio mortis causa*, or gift in view of impending dissolution from an existing disorder or danger. Such a gift is always ambulatory and conditional, revocable during the lifetime of the donor. The essentials of a gift *mortis causa* are that it be made with a view to the donor's death from a present sickness or peril; that there be such present actual or constructive delivery of the subject of the donation as the circumstances of the parties and nature and situation of the property permit; and the gift conditioned to become absolute only on the death of the donor, survived by the donee. The writing of September 4th and facts found present all these elements. The context and circumstances make plain what deceased meant when he wrote, "In case anything should happen to me." The court finds that at the time he executed this paper he considered himself a very sick man, that his condition was serious, and on that day he went east for relief accompanied by an attendant, dying shortly thereafter. It is not essential to a *causa mortis* gift that the donor is *in extremis* and certain of speedy death. The law fixes

no such limit. Such gift may be made by one apprehensive of death from a present malady, or imminent peril, as from a necessary surgical operation which he intends to voluntarily undergo in hope of relief. *Ridden* v. *Thrall,* 125 N. Y. 572 (26 N. E. 627, 11 L. R. A. 684, 21 Am. St. Rep. 758). A gift *causa mortis,* being limited to personal property, may be made without writings. No particular form of words, written or spoken, is necessary to give effect to such a gift, provided the evidence of what was said and done establishes the requisites for its validity. *Vandor* v. *Roach,* 73 Cal. 614 (15 Pac. 354). For the foregoing reasons, we conclude that the furniture in dispute, which is purely personal property capable of manual delivery, passed to appellee as a *causa mortis* gift; but other questions arise as to the leases of the hotel which it is urged by appellant are clearly interests in real estate and could not thus be transferred in this State in violation of section 9509, 3 Comp. Laws (3 Comp. Laws 1915, § 11975), which provides:

"No estate or interest in lands, other than leases for a term not exceeding one year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by some person thereunto by him lawfully authorized by writing."

It is elementary, however, that title to real estate cannot pass by a gift *causa mortis,* which originally had application only to chattels which could be transferred by manual delivery, and has since been extended to personal property generally, which could pass by constructive delivery, including choses in action, with their security even though the security was a lien on realty. While leases for a term of years are chattels real, passing no title or fee of the land, and

are as a rule held to be personal property, they are nevertheless an interest in land, and as such it may well be questioned whether the law of gifts *causa mortis* would be applicable to them even in the absence of statute defining the manner in which they may be transferred. We are not cited to any authority holding that a leasehold interest in land for a term of years is within the law of *causa mortis* gifts. That such interest is within the purview of the statute of frauds invoked is made plain by the language of the act, and is so recognized by this court, including subleases. *Fratcher* v. *Smith,* 104 Mich. 537 (62 N. W. 832). This law has been repeatedly held to cover every case where an interest in land is divested by act of the party concerned including both surrenders and transfers. *Enos* v. *Sutherland,* 11 Mich. 538; *Morrill* v. *Mackman,* 24 Mich. 279 (9 Am. Rep. 124); *Whiting* v. *Butler,* 29 Mich. 122; *McEwan* v. *Ortman,* 34 Mich. 325; *Broas* v. *Broas,* 153 Mich. 310 (116 N. W. 1077); *Longe* v. *Kinney,* 171 Mich. 312 (137 N. W. 119); and numerous cases there cited. While deceased's conditional "statement" that if anything happened to him his wife "is the owner of everything we possess" may be recognized of some probative value touching a *causa mortis* gift, it fails to disclose any of the characteristics of a "deed or conveyance in writing" of an interest in land, which must be complete in itself and leave nothing resting in parol. *Gault* v. *Stormont,* 51 Mich. 636 (17 N. W. 214); *Hilberg* v. *Greer,* 172 Mich. 505 (138 N. W. 201). If it did not transfer all his interest in land, it did not transfer any. No claim is made that it transferred his lot in the Wood addition inventoried as part of his estate.

For the foregoing reasons, the conclusion is reached that the furniture passed to appellee as a gift *causa mortis* by the transaction of September 4, 1913, but that the leases, being an interest in land, were not

assigned to her by any deed or conveyance in writing in conformity with statutory requirement, and the same, or the proceeds thereof from sale by his administratrix, belong to his estate.

The record does not disclose the value of the unexpired terms of these leases apart from the other property or assets included in the sale made by the administratrix, and this court has before it no sufficient facts as basis on which to review and adjudicate her account.

The decision of the circuit court sustaining the order of the probate court will therefore be reversed as to the leasehold interests involved for the reasons above stated, with costs of this court, and the case remanded to the circuit court for retrial and such further proceedings upon the final account of said administratrix as parties may desire and the trial court determine, in harmony with this opinion.

KUHN, C. J., and STONE, OSTRANDER, BIRD, MOORE, BROOKE, and FELLOWS, JJ., concurred.