# STATE OF MICHIGAN

# COURT OF APPEALS

WILLIAM E. KASBEN,

        Plaintiff-Appellant,

v

JOSEPH T. KASBEN, JOHN M. KASBEN, and
BARBARA FIEBING,

        Defendants-Appellees,

and

BERYL W. KASBEN a/k/a BERYL W.
HOFFMAN a/k/a BERYL MARLENE WILSON,
WILLIAM E. KASBEN, Personal Representative
for the Estate of EDWIN J. KASBEN, and SSLJ
CORPORATION,

        Defendants.

UNPUBLISHED
May 19, 2015

No. 314851
Leelanau Circuit Court
LC No. 2001-005583-CH

Before: RONAYNE KRAUSE, P.J., and WILDER and STEPHENS, JJ.

RONAYNE KRAUSE, P.J. *(dissenting)*

      I respectfully dissent. The trial court certainly took some improper liberties with this Court's order on remand and interpreted this Court's instructions rather loosely. While I am disappointed in the trial court's conduct, I nevertheless recognize that the trial court remains in the better position to assess the credibility of the parties and is more intimately familiar with the parties and the situation in this matter.[1] I would therefore prefer to extend to the trial court the

---

[1] I take issue with the trial court's hypothesis that certain facts "may not have been complete in the prior record in this case and may therefore explain the Court of Appeals' reversal of the trial court's determination." That is possible. However, this Court is *a court of record*, and any matters that a party or court wishes to be available for this Court's consideration must *be made a part of the record*. It is the responsibility of the parties and lower courts to ensure that the record is as complete as they deem necessary; it is *not* the responsibility of this Court to conduct its own audit of lower court records for completeness, and particularly not to conduct its own

-1-

courtesy of some benefit of the doubt. I conclude that the trial court must, by necessary implication, have made a determination of the appurtenance of the option agreements; I agree with the majority that the trial court's ruling must be construed as holding that the option agreements did not run with the land. Unlike the majority, I agree that the option agreements do not run with the land and do not believe this Court's prior opinion mandates otherwise. Consequently, I would affirm, because this Court generally affirms correct results, no matter the reasoning of why they were achieved below. *Leszczynski v Johnson*, 155 Mich App 392, 396; 399 NW2d 70 (1986).

"Whether a trial court followed an appellate court's ruling on remand is a question of law that this Court reviews de novo." *City of Kalamazoo v Dep't of Corrections (After Remand)*, 229 Mich App 132, 134-135; 580 NW2d 475 (1998). "[W]hen an appellate court gives clear instructions in its remand order, it is improper for a lower court to exceed the scope of the order." *K & K Constr, Inc v Dep't of Environmental Quality*, 267 Mich App 523, 544; 705 NW2d 365 (2005). However, the trial court may consider on remand whatever is not inconsistent with the judgment of the appellate court. *Sokel v Nickoli*, 356 Mich 460, 464; 97 NW2d 1 (1959).

In this Court's prior opinion, this Court ruled that the option agreements "provide that William Kasben has the right to buy the property at a specified price and a specified time" and that they were "clear" that "William Kasben had the right to repurchase the property from Edwin Kasben under the condition that Edwin Kasben 1) stopped farming, 2) decided to sell the property; or 3) died." Plaintiff makes much of the fact that the trial court nevertheless went on to find ambiguity in the option agreements. I am not so concerned: the fact that this Court found it unclear whether the option agreements ran with the land unambiguously shows that this Court did not find the option agreements to be *absolutely clear in all respects*, but rather "clear" insofar as they were definitely option agreements and definitely set forth the three possible events that could trigger the options.

The trial court's observation that no option was triggered upon Ed making a *gift* of the property is nothing but a necessary corollary of this Court's findings. The trial court's further observation that if plaintiff "wished to exercise the option upon his father making a gift, then he should have included that language in the deed which *he* drafted" is simply an elementary rule of contracts, bordering on being a tautology. The trial court's finding that the option agreements "provide no clear triggering events" is, of course, incompatible with this Court's prior opinion. However, the trial court's finding that they "provide no clear . . . methodology for resolving ambiguities so that they can be reasonably enforced" is not contraindicated. Indeed, this Court's prior opinion cannot be construed as anything other than a holding that the agreements *are* ambiguous under the circumstances at bar.

This Court's prior opinion necessarily also constitutes a holding that the options cannot be exercised with the property now owned by parties other than Ed unless those options run with the land. Otherwise, the question would be irrelevant and therefore moot. Finally, although the rule of *contra proferentem* is not, strictly speaking, a true rule of construction and should only be

---

independent field research. This Court inherently can only work with the information it is given *in the record submitted to it*.

resorted to if all other attempts to discern the intent of the parties to a contract have failed, it is properly applied in the absence of better evidence. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459; 470-477; 663 NW2d 447 (2003).

The trial court analyzed the circumstances under which the option agreements were created. In particular, plaintiff and his wife "caused certain deeds to be recorded . . . ostensibly involving conveyances from Ed Kasben to William and Beryl [his wife] of" the properties; subsequently, Ed "complained and a criminal prosecution was pursued." Ed's wife, Leona, died while the prosecution was pending, and

> the criminal cases were dismissed on the theory that Ed Kasben had provided certain deeds to Leona with instructions that they were not to be delivered to William and Beryl until [Ed] died. The story was that Leona improperly gave the deeds to William and Beryl who then caused them to be recorded together with other deeds upon which Ed Kasben's signature had been forged. Beryl [], herself an attorney, and then immersed in contentious divorce proceedings with William, surprisingly took responsibility for forging Ed Kasben's signature. Leona was not available to give her side of the story . . . So, to cause the dismissal of criminal charges brought against William and Beryl for improperly filing deeds and forging deeds, William agreed to deed the property back to his father but reserved options to himself.

The trial court deemed the option agreements to be based on no consideration whatsoever, but as noted, this Court held otherwise, and the law of the case doctrine mandates that this Court and the trial court adhere to that holding, irrespective of whether it is correct. *Grievance Administrator v Lopatin*, 462 Mich 235, 260; 612 NW2d 120 (2000). Nevertheless, the trial court's additional facts adduced on remand are highly relevant.

The trial court's reasoning was not specific, but the unambiguous import is that the initial fraudulent transfer from Ed to William was understood to be something in the nature of a prematurely-delivered gift *causa mortis*. A true gift *causa mortis*, of course, must "be made with a view to the donor's death from a present sickness or peril; that there be such present actual or constructive delivery of the subject of the donation as the circumstances of the parties and nature and situation of the property permit; and the gift conditioned to become absolute only on the death of the donor, survived by the donee." *In re Reh's Estate*, 196 Mich 210, 218; 162 NW 978 (1917). Whether such a gift would have been valid is irrelevant, however; its relevance is that it shows the parties' intentions. The option agreements clearly were intended to effectuate roughly the same result as the supposedly intended delivery of deeds upon Ed's death. However, any such intended future delivery can always be altered by the would-be donor prior to his or her death. See *Lumberg v Commonwealth Bank*, 295 Mich 566, 568-569; 295 NW 266 (1940). It therefore stands to reason that the omission of any option being triggered upon *gifting* the property must have been intentional. It further stands to reason that any such gift would cut off the availability of those options.

As discussed, we all agree that the trial court's opinion that it implicitly held that the option agreements did not run with the land. I agree with that conclusion, and as a necessary consequence, the gifts from Ed to his children terminated the availability of those options to

-3-

plaintiff.  I therefore find it unnecessary to address any other concerns raised on appeal, and I would affirm.


/s/ Amy Ronayne Krause