*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* ESTATE OF SHIRLEY A. HUHTA.

---

KEITH BRIAN JUSTICE,

          Plaintiff-Appellee,

v

TINA MARIE DEFORGE,

          Defendant-Appellant.

UNPUBLISHED
July 18, 2019

No. 343863
Houghton Probate Court
LC No. 2016-025897-CZ

---

Before: SAWYER, P.J., and BORRELLO and SHAPIRO, JJ.

PER CURIAM.

The parties are siblings disputing whether a large sum of money should have been included as part of their deceased mother's estate. Defendant appeals the trial court's opinion and order following a bench trial that the money was not a gift to defendant from the decedent but rather became part of the decedent's estate, to which plaintiff was entitled half. For the reasons stated below, we affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Many of the facts of this case are undisputed. The parties are the children of decedent, Shirley Huhta. Shirley was in poor health in 2012. In June 2012, she and defendant visited Wells Fargo and opened a safe deposit box. According to defendant, they placed $122,000 of Shirley's money into the box. Only defendant's name was on the box, and only defendant retained a right of access to it. In July 2012, Shirley executed a will that equally divided her estate between plaintiff and defendant. On that same day, she created a durable power of attorney (DPOA) in which she named defendant as her attorney-in-fact. Sometime after the will and DPOA were created, Shirley and defendant opened a joint checking account with rights of survivorship. In December 2012, Shirley obtained a right of access to the Wells Fargo safe deposit box and her name was added to the box. Defendant testified that in October 2013 she

and Shirley withdrew $38,000 from the box for Shirley's use. This left $84,000 in the deposit box—the money at the center of this dispute.

Shirley died in April 2014. Days after her death, defendant closed the safe deposit box, removed the money, and brought it to her own house. In August 2014, defendant filed in the probate court a petition for assignment of Shirley's estate that made no reference to the $84,000.

Separate from the present action, defendant went through divorce proceedings beginning in 2015. As part of the divorce action, defendant submitted answers to interrogatories; she also testified at a divorce hearing in May 2016. In the answers to the interrogatories and in her testimony at the hearing, defendant referred to the $84,000 as her inheritance and claimed that Shirley had left this money to her after her death. Defendant also claimed that $20,000 of the $84,000 belonged to plaintiff as part of his inheritance and that she had been borrowing the $20,000 with plaintiff's permission because she did not have access to marital assets during the divorce action. Defendant further stated that she had used a portion of the $84,000 to purchase many expensive items, including a boat, trailer, and an ATV.

Plaintiff filed the present action in December 2016 largely on the basis of defendant's statements made in the divorce action. Plaintiff claimed that he never agreed to loan defendant $20,000, that he never received his inheritance, and that defendant improperly spent the $84,000. He claimed that the $84,000 was part of Shirley's estate and should have been equally divided according to the terms of her will.[1]

In November 2017, plaintiff filed a motion for summary disposition under MCR 2.116(C)(10) (no genuine issue of mater fact), arguing that plaintiff was entitled to half of the $84,000 based on defendant's statements in the divorce action. In opposition, defendant argued that the $84,000 was an *inter vivos* gift from Shirley and that defendant's statements in the divorce action were not inconsistent with her position in the present action. Defendant claimed that Shirley wanted plaintiff to have his teeth repaired and a prepaid funeral arranged. Defendant explained that the $20,000 that she referenced in the divorce action was an estimate of what those services would cost.

The trial court granted partial summary disposition and awarded plaintiff $17,000. The parties agreed that defendant had already paid plaintiff $3,000. The trial court held that plaintiff was entitled to at least the $20,000 that defendant referenced as a loan in the divorce action minus $3,000.

The trial court denied plaintiff's motion as to the remaining issues, and the parties proceeded to a bench trial. In addition to the parties, the court heard testimony from Gary

---

[1] Plaintiff alleged conversion/embezzlement, unjust enrichment, and fraud. Much of plaintiff's complaint involved allegations that defendant owed and violated a fiduciary duty to plaintiff. With one exception, the portions of the trial court's decision addressing the fiduciary issues are not relevant to this appeal.

Justice, the parties' brother.[2] Gary testified that he did not learn of the $84,000 until plaintiff told him about it. He stated that when he asked defendant why she did not divide the money with plaintiff, she replied that she had spent the money on her divorce and medical bills and referred to the money as a "godsend."

In a written opinion, the trial court ruled that the $84,000 had not been a gift from Shirley to defendant but had been part of Shirley's estate. The trial court found untenable defendant's position that the money was a gift from Shirley given defendant's statements in the divorce action that the money was part of her inheritance. The court also found it significant that Shirley accessed the funds in the safe deposit box, while defendant did not spend that money until after Shirley's death. Accordingly, the court ordered that plaintiff was entitled to half of the $84,000, reduced by several outstanding debts that plaintiff owed Shirley at the time of her death.

## II. ANALYSIS

Defendant first argues that the trial court clearly erred in determining that the $84,000 was not an *inter vivos* gift. We disagree.[3]

We summarized the law regarding *inter vivos* gifts in *In re Casey Estate*, 306 Mich App 252, 263-264; 856 NW2d 556 (2014):

> "[F]or a gift to be valid, three elements must be satisfied: (1) the donor must possess the intent to transfer title gratuitously to the donee, (2) there must be actual or constructive delivery of the subject matter to the donee, unless it is already in the donee's possession, and (3) the donee must accept the gift." *Davidson v Bugbee,* 227 Mich App 264, 268; 575 NW2d 574 (1997). "A gift *inter vivos* is not only immediate, but absolute and irrevocable." *In re Reh's Estate,* 196 Mich 210, 217; 162 NW 978 (1917). Delivery must be unconditional and must place the property within the dominion and control of the donee. *Osius v Dingell,* 375 Mich 605, 611; 134 NW2d 657 (1965). Additionally, an inter vivos gift "must be fully consummated during the lifetime of the donor and must invest ownership in the donee beyond the power of recall by the donor." *Id.*

---

[2] Gary testified that he told Shirley to leave him out of her will.

[3] Whether a party intended to gift property presents a question of fact. *In re Rudell Estate*, 286 Mich App 391, 404; 780 NW2d 884 (2009). Following a bench trial, we review the trial court's findings of fact for clear error. *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 195; 761 NW2d 293 (2008); MCR 2.613(C). Clear error occurs when "after a review of the record, this Court is left with a definite and firm conviction that a mistake was made." *Lawrence v Burdi*, 314 Mich App 203, 220; 886 NW2d 748 (2016). Further, we give due regard "to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." MCR 2.613(C).

In this case, the evidence showed that Shirley retained dominion and control over the money in the safe deposit box. Although the safe deposit box was originally leased in defendant's name only, Shirley's name was added to the box the same year. According to defendant, she and Shirley later withdrew substantial funds from the box for Shirley's use. Defendant, on the other hand, did not use funds from the box for her own expenses until after Shirley's death. This indicates that Shirley did not intend to make an *inter vivos* transfer to defendant but instead intended for the $84,000 to become part of her estate. The fact that the safet deposit box was jointly held did not necessitate a finding that the money was a gift or that there were rights of survivorship. When a safe deposit box lease does not explicitly "provide for the passage of title of the contents of the box" but merely allows a joint right of access to the box, the joint right of access "is one factor which may properly be considered in arriving at the decedent's intent regarding another's interest in such contents." *City Bank & Trust Co, NA v Leightner*, 67 Mich App 247, 250; 240 NW2d 762 (1976). Having joint right of access does not, by itself, "effect a change in ownership of the contents of the box . . . ." *Id*. Here, Shirley and defendant's actions with respect to the safe deposit box supported the trial court's finding that Shirley did not intend to irrevocably transfer the $84,000 to defendant as a gift.

Defendant's statements in the divorce action also undermined her position that the money was a gift. Video recordings of the hearings in the prior divorce action were jointly admitted into evidence at trial. Defendant testified in those proceedings that $84,000 left after Shirley's death was an inheritance, $20,000 of which was for plaintiff. At no time in those proceedings did defendant refer to the $84,000 as a gift. Contrary to defendant's argument on appeal, the trial court did not improperly rely on judicial estoppel or res judicata to preclude her testimony in this case. The court did not discuss or apply either doctrine. Rather, the court plainly evaluated the credibility of defendant's testimony in light of her prior inconsistent statements in the divorce action.

Defendant argues that the trial court erred in accepting plaintiff's testimony over defendant's testimony. But "the credibility of witnesses and the weight to be given their testimony are proper matters for determination by the trier of facts." *In re Oversmith's Estate*, 340 Mich 104, 106; 64 NW2d 678 (1954). Further, the trial court did not expressly rely on plaintiff's testimony as support for its decision. The court did rely on the testimony of the parties' brother, who, as noted, testified that when he asked defendant why she did not share the money with plaintiff, she replied that she had spent the money on her divorce and medical bills and made no mention of the money being a gift.

In sum, the trial court did not clearly err in finding that the $84,000 was not an *inter vivos* gift but instead became a part of the estate. Defendant repeatedly represented that the $84,000 came to her through inheritance. Defendant did not refer to that money as a gift until the present action was brought. Further, defendant's own testimony established that Shirley continued to exert control over the money in the safe deposit box. And because we affirm the trial court's decision after the bench trial, we need not address defendant's argument that the trial court erred in granting plaintiff partial summary disposition. See *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998) ("As a general rule, an appellate court will not decide moot issues.").

Next, defendant raises a claim of judicial bias and partiality based on the following conclusion in the trial court's opinion:

> Ms. Deforge was appointed DPOA for her mother *after she obtained the money* that was not placed in the safety deposit box in June of 2012 and therefore did not have a fiduciary duty regarding that money to her mother pursuant to MCL 700.1308 as she was not named her mother's attorney-in-fact until July 24, 2012. [Emphasis added.]

Defendant argues that the court's statement that defendant "obtained the money" is inconsistent with the court's finding that the money was not a gift. We fail to see how this statement is evidence of judicial basis given that it was made in a ruling favorable to defendant. Further, the trial court was referring to money "not placed" in the safe deposit box, i.e., not the $84,000. In any event, if the judge's statement was error, a single mistake does not overcome the presumption that the trial judge was impartial. See *Mitchell v Mitchell*, 296 Mich App 513, 532; 823 NW2d 153 (2012) ("A trial judge is presumed unbiased, and the party asserting otherwise has the heavy burden of overcoming the presumption."); *In re Contempt of Henry*, 282 Mich App 656, 680; 765 NW2d 44 (2009) (The mere fact that a judge ruled against a litigant, even if the rulings are later determined to be erroneous, is not sufficient to require disqualification or reassignment.").

Finally, defendant argues that the trial court abused its discretion by denying her motion for reconsideration.[4] MCR 2.119(F)(3), which governs motions for reconsideration, states:

> Generally, and without restricting the discretion of the court, a motion for rehearing or reconsideration *which merely presents the same issues ruled on by the court, either expressly or by reasonable implication, will not be granted.* The moving party must demonstrate a palpable error by which the court and the parties have been misled and show that a different disposition of the motion must result from correction of the error. [Emphasis added.]

In defendant's motion for reconsideration, she asserted the same arguments and positions presented at trial and in her opposition to plaintiff's motion for summary disposition. Rather than demonstrate palpable error that misled the trial court, defendant merely attempted to

---

[4] We review a trial court's decision on a motion for reconsideration for an abuse of discretion. *Bill & Dena Brown Trust v Garcia*, 312 Mich App 684, 695; 880 NW2d 269 (2015). An abuse of discretion "occurs when the court's decision falls outside the range of principled outcomes." *Id*.

relitigate the issues that the trial court already decided. Because defendant failed to advance any new position, the trial court did not abuse its discretion in denying defendant's motion for reconsideration.

Affirmed.

/s/ David H. Sawyer
/s/ Stephen L. Borrello
/s/ Douglas B. Shapiro