MARILYN Kelly, J.
Plaintiff, Pamela Mattison, gave birth to twins who were conceived by artificial insemination after their father, Jeffery Mattison, had died. She sought social security survivors’ benefits for the children based on Jeffery’s earnings. The Social Security Administration denied her application, and an administrative law judge affirmed that decision. Plaintiff then filed an action in the United States District Court for the Western District of Michigan challenging the decision. That court has asked us to rule on the determinative issue, which is whether the children can inherit from Jeffery under *73 Michigan intestacy law. Only if they can inherit would they be entitled to social security survivors’ benefits.
The district court certified the question to this Court in accordance with MCR 7.305(B) in these words:
Whether M.M. and M.M. [plaintiffs twins], conceived after the death of Jeffery Mattison via artificial insemination using his sperm, can inherit from Jeffery Mattison as his children under Michigan intestacy law.
Having heard oral argument, we grant the district court’s request to answer the question. We hold that, under Michigan intestacy law, plaintiffs children cannot inherit from Jeffery. We return the matter to the district court for further proceedings as that court deems appropriate.
I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY
Plaintiff and Jeffery Mattison were married in 1995. In 1997, plaintiff became pregnant with the aid of artificial insemination and gave birth to a daughter. Plaintiff and Jeffery wanted more children but were unable to conceive naturally because of Jeffery’s medical conditions, which included lupus, diabetes, high blood pressure, and kidney failure.
Because chemotherapy treatment for lupus would damage Jeffery’s sperm, he interrupted his chemotherapy treatment and deposited his semen into a sperm bank, where it was frozen and stored. Soon after the birth of his daughter, Jeffery executed a general durable power of attorney that appointed plaintiff as his attorney-in-fact. Included among the powers given to her was the authority to “take any and all action necessary pertaining to any sperm or embryos [Jeffery] may have stored including their implantation or termination.” In October 2000, plaintiff and Jeffery began an in vitro fertilization program in which plaintiff received *74 daily hormone injections. These were necessary to allow her eggs to be harvested.
Jeffery died unexpectedly on January 18, 2001, in Michigan. Plaintiff continued the in vitro fertilization program after his death and underwent egg retrieval on January 28, 2001. Those eggs were inseminated with Jeffery’s sperm and transplanted into plaintiff on January 30, 2001. As a result of the transplantation process, plaintiff gave birth to twins on October 8, 2001.
On October 23, 2001, plaintiff filed an application for social security survivors’ benefits based on Jeffery’s earnings records on behalf of her twins. The Social Security Administration denied the application and later denied reconsideration. Plaintiff then requested a hearing on the matter. The presiding administrative law judge decided that plaintiffs twins were not entitled to social security survivors’ benefits because they could not inherit from Jeffery under Michigan intestacy law. The Social Security Administration Appeals Council denied plaintiffs request for review of the administrative law judge’s decision.
In August 2005, plaintiff filed suit in the United States District Court for the Western District of Michigan, challenging the denial of benefits. The parties stipulated that the determinative issue is whether plaintiffs twins can inherit from Jeffeiy under Michigan intestacy law as his children. The district court entered an order approving a magistrate’s recommendation to ask this Court to resolve the question. For reasons unknown, the question was not filed in this Court until nearly five years later.
We granted oral argument on whether to answer the question certified to us.[1]
*75 II. ANALYSIS
A. LEGAL BACKGROUND
The Social Security Act authorizes disbursement of survivors’ benefits for children who were dependent on a deceased worker before his or her death.[2] As the United States Supreme Court has noted, the purpose of providing survivors’ benefits is to protect children from a loss of support resulting from the death of a parent.[3] However, not all children of a deceased parent are eligible for these benefits. To be eligible, an applicant must demonstrate that he or she (1) is the “child” of the deceased wage earner[4] and (2) was dependent on that person at the time of that person’s death.[5]
Whether an applicant is the child of a deceased wage earner for purposes of the Social Security Act is governed by 42 USC 416(h)(2)(A), which provides:
In determining whether an applicant is the child or parent of a fully or currently insured individual for purposes of this subchapter [42 USC 401 through 434], the Commissioner of Social Security shall apply such law as would be applied in determining the devolution of intestate personal property by the courts of the State in which such insured individual is domiciled at the time such applicant files application or, if such insured individual is dead, by the courts of the State in which he was domiciled at the time of his death .... [Emphasis added.]
Thus, because Jeffery was domiciled in Michigan when he died, the issue to be resolved is whether our state intestacy law permits the twins to inherit from Jeffery.
*76 The United States Supreme Court recently spoke on this subject in the case of Astrue v Capoto.[6] The respondent’s husband had died 18 months before she gave birth to twins conceived through in vitro fertilization using the decedent’s frozen sperm. The respondent applied for social security survivors’ benefits on their behalf. When the Social Security Administration denied her application, she brought an action in the courts to review the decision.
The trial court found that the respondent’s deceased husband was domiciled in Florida at his death. Under Florida law, children conceived after a parent’s death cannot inherit from that parent through intestate succession and thus cannot receive social security survivors’ benefits as children of that parent. The United States Court of Appeals for the Third Circuit reversed that decision. It applied the Social Security Act and opined that the undisputed biological children of an insured and his widow qualify for survivors’ benefits without regard to state intestacy law.[7] But the United States Supreme Court reversed the judgment of the Third Circuit. It held that the question whether posthumously conceived children qualify for social security survivors’ benefits must be determined under state intestacy law.[8]
Michigan law has long established that the rights to intestate inheritance vest at the time of a decedent’s death.[9] They are governed by statutory provisions *77 found in article II, part 1 of the Estates and Protected Individuals Code (EPIC).[10]
Several EPIC provisions bear on whether plaintiffs twins can inherit from Jeffery. The first, MCL 700.2101(1), provides that “[a]ny part of a decedent’s estate not effectively disposed of by will passes by intestate succession to the decedent’s heirs as prescribed in this act. . ..” Next, MCL 700.2103 provides that “[a]ny part of the intestate estate that does not pass to the decedent’s surviving spouse . . . passes ... to [certain] . . . individuals who survive the decedent[.]” MCL 700.1107(j) defines “survive” as meaning that “an individual neither predeceases an event, including the death of another individual, nor is considered to predecease an event under [MCL 700.2104 or MCL 700.2702].”[11]
Likewise, MCL 700.2106(3)(b) defines “surviving descendant” as “a descendant who neither predeceased the decedent nor is considered to have predeceased the decedent under [MCL 700.2104].” MCL 700.2104 states, “An individual who fails to survive the decedent by 120 hours is considered to have predeceased the decedent for purposes of. . . intestate succession, and the decedent’s heirs are determined accordingly.” Hence, an individual must be alive when the decedent dies and live more than 120 hours afterward to inherit from the decedent’s estate under the laws of intestate succession.
*78 Also relevant is MCL 700.2108 which states, “An individual in gestation at a particular time is treated as living at that time if the individual lives 120 hours or more after birth.” Finally, MCL 700.2114(1)(a) provides, in pertinent part:
If a child is born or conceived during a marriage, both spouses are presumed to be the natural parents of the child for purposes of intestate succession. A child conceived by a married woman with the consent of her husband following utilization of assisted reproductive technology is considered as their child for purposes of intestate succession.
On the basis of these provisions, there are two groups of people relevant to this case that may acquire intestate inheritance rights: (1) descendants alive at the moment of the decedent’s death who live more than 120 hours immediately following the decedent’s death and (2) descendants in gestation at the time of the decedent’s death who live 120 hours after birth.
B. APPLICATION
Considering these statutes, plaintiff’s twins cannot inherit from Jeffery by intestate succession. The record shows that plaintiff’s eggs were not inseminated with Jeffery’s sperm and implanted until January 30, 2001, which was 12 days after Jeffery died. Because plaintiff’s twins were not in gestation at Jeffery’s death, no inheritance rights vested in them at that time pursuant to MCL 700.2108. Moreover, because the twins were not living at the time of his death, they had no inheritance rights as heirs pursuant to MCL 700.2104.
Nor does MCL 700.2114(1)(a) allow the twins to inherit from Jeffery. That statute indicates that, for *79 purposes of intestate succession, a child is presumed to be the natural issue of both spouses if born or conceived during the marriage. It includes in that presumption children conceived by a married woman with the consent of her husband following the use of assisted reproductive technology. Applying that provision here, the twins were neither conceived nor born during plaintiff and Jeffery’s marriage because “[m]arriage is a status that legally terminates . . . upon the death of a spouse . [12] Accordingly, the twins are not Jeffery’s children for purposes of the state laws of intestate succession and, therefore, they cannot inherit from him.[13]
In sum, nothing in EPIC or in other relevant statutory provisions contemplates intestate succession rights for plaintiffs twins. Because they were conceived and born after Jeffery’s death, they did not survive him as his heirs in the eyes of the law. Therefore, we answer the certified question in the negative.
III. CONCLUSION
We hold that under Michigan intestacy law, plaintiffs twins, who were conceived after the death of Jeffery Mattison through artificial insemination using his sperm, cannot inherit from Jeffery as his children. We answer the certified question in the negative and return the case to the district court for such further proceedings as that court deems appropriate.
Markman, Hathaway, Mary Beth Kelly, and Zahra, JJ., concurred with MARILYN KELLY, J.

 In re Certified Question from the United States Dist Court for the Western Dist of Mich, 493 Mich 853 (2012).

 See generally 42 USC 402(d).

 Mathews v Lucas, 427 US 495, 507; 96 S Ct 2755; 49 L Ed 2d 651 (1976).

 42 USC 402(d)(1) and (2).

 42 USC 402(d)(1)(C)(ii).

 Astrue v Capoto, 566 US_; 132 S Ct 2021; 182 L Ed 2d 887 (2012).

 Capato v Social Security Comm’r, 631 F3d 626, 630 (CA 3, 2011).

 Astrue, 566 US at__132 S Ct at 2031-2033.

 In re Adolphson Estate, 403 Mich 590, 593; 271 NW2d 511 (1978) (“Determinations of heirs are to be governed by statutes in effect at the time of death....”); In re Dempster’s Estate, 247 Mich 459, 462; 226 NW 243 (1929), quoting In re Pivonka’s Estate, 202 Iowa 855; 211 NW 246 (1926) (“ ‘The estate of the insured’ came into being as the estate of a deceased person... instantly upon the death of such deceased person. The heirs of a decedent are... to be determined by ascertaining upon whom the law casts the estate immediately upon the death of the ancestor.”).

 MCL 700.2101 et seq.

 Random House Webster’s College Dictionary (2001) similarly defines “survive” as, among other things, “1. to remain alive, as after the death of another or the occurrence of some event; continue to live.... 4. to continue to live or exist after the death, cessation, or occurrence of.” Thus, to survive the death of another, one must be living at the time of that person’s death.

 Byington v Byington, 224 Mich App 103, 109; 568 NW2d 141 (1997).

 Although it is not relevant to our determination in this case, we note that Jeffery died without a will.