# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* Estate of KENNETH JAMES KOEHLER.

---

SHERRY BIERKLE, Personal Representative of
the Estate of Kenneth James Koehler,

       Appellant,

v

ERNEST LEE UMBLE,

       Appellee.

FOR PUBLICATION
March 24, 2016

No. 322996
Oakland Probate Court
LC No. 2012-341834-DE

---

*In re* Estate of KENNETH JAMES KOEHLER.

---

SHERRY BIERKLE, Personal Representative of
the Estate of Kenneth James Koehler,

       Appellant,

and

JOSEPH YORK, EDMUND YORK, RONALD
MCKEEL, DANIEL MCKEEL, GREGORY
MCKEEL, MICHAEL SIES, NANCY
SCHREIBER, and TERRI CARTER,

       Interested Persons,

v

ERNEST LEE UMBLE,

       Appellee.

No. 322997
Oakland Probate Court
LC No. 2012-341834-DE

---

Before: SHAPIRO, P.J., and O'CONNELL and GLEICHER, JJ.

-1-

O'CONNELL, J. (*dissenting*).

I respectfully dissent. Because MCL 700.3407 places the burden on the petitioner to prove heirship, and appellee Ernest Lee Umble is attempting to establish heirship, he has the burden to prove his status as an heir. Accordingly, I would place the burden to establish heirship on Umble, and I believe the proper analysis of this case is as follows:

In 1931, Carl Cedric Umble, the paternal grandfather of decedent, Kenneth James Koehler, died in a knife-fight that began when he punched a man for kissing Florence Koehler, who was then pregnant with Carl Umble's child. At that time, Carl Umble was married to Lyndall Hackett, with whom he also had a legitimate child. He could not have known that his decisions would seriously complicate the administration of his grandson's estate.

Appellant, Sherry Bierkle, appeals as of right the probate court's order granting summary disposition in favor of appellee, Ernest Lee Umble. Bierkle raises two issues on appeal. First, the probate court ruled that Umble is a paternal heir to Kenneth Koehler under the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq.* Bierkle contends that the trial court erred. I disagree and conclude that the trial court correctly found that Umble is a paternal relative under EPIC.

Second, Bierkle contends that the trial court incorrectly decided that MCL 700.2114(4), which precludes a natural parent inheriting from a child that the parent failed to acknowledge or refused to support, cannot apply in a case where a parent predeceased the child. I agree and conclude that MCL 700.2114(4) can apply, and I further conclude that unresolved factual issues exist regarding whether Carl Umble acknowledged and/or refused to support Carl Koehler. I would reverse and remand for further proceedings consistent with this opinion.

## I. FACTUAL BACKGROUND

In February 2012, Koehler died intestate with a distributable estate of about $500,000. Koehler had no children or siblings, and his parents predeceased him. On July 8, 2013, Sherry Bierkle, Koehler's maternal cousin, filed a final accounting and a proposed settlement of Koehler's estate among his maternal relatives. On July 23, 2013, Umble objected to Bierkle's proposed settlement. Umble asserted that he was Koehler's paternal uncle. The family tree is as follows:



A news article from February 8, 1931, provides the context for Carl Umble's death. Carl Umble had been "separated for several months from his wife, Mrs. Lydia Hackett Umble . . ." Florence Koehler and Carl Umble quarreled and he "failed to revive the girl's affection for him," but he was "reported to have threatened violence to any who went out with [Koehler] . . . ." Clyde Shadwick, who admitted to stabbing Carl Umble, stated that he was "knocked down by a blow of Umble's fist" when he attempted to kiss Florence Koehler, and he stabbed Carl Umble in self-defense. Carl Koehler was born about three months later, and his Colorado birth certificate listed Carl Umble as his father.

Bierkle filed a proposed settlement of Koehler's estate among his maternal relatives. Shortly afterward, Umble filed objections, asserting that Koehler's paternal relatives[1] were entitled to half the estate. Bierkle filed for summary disposition, asserting that even if Carl Umble was Carl Koehler's natural father, Umble could not be an heir to Koehler's estate at law. According to Bierkle, Carl Umble was barred from inheriting as a matter of law because MCL 700.2114(4) provides that a parent may not inherit through a child that the parent did not acknowledge or failed to support. According to Bierkle, it was impossible for a predeceased parent to establish that he acknowledged or supported an afterborn child.

Umble responded that the probate court should grant summary disposition in his favor under MCR 2.116(I)(2) because MCL 700.2114(4) does not apply if the parent predeceased the birth of the child. According to Umble, this section conflicted with other provisions of EPIC. Following a hearing, the probate court granted summary disposition in favor of Umble. It reasoned that applying MCL 700.2114(4) in cases where a child predeceased the parent would conflict with other sections of EPIC.

The probate court held a bench trial to determine whether Carl Umble was the natural father of Carl Koehler. Following proofs by both parties, the probate court found that Carl Umble was Carl Koehler's father and was entitled to inherit through him. As a result, it sustained Umble's objections to the proposed settlement of Koehler's estate and ruled that Koehler's paternal relatives should inherit half the estate.

Bierkle now appeals. The questions this Court must answer to resolve the issues presented are (1) whether Carl Umble was the father of Carl Koehler for the purposes of EPIC, and (2) whether MCL 700.2114(4) applies in cases of afterborn children.

II. STANDARDS OF REVIEW

This Court reviews for clear error the probate court's factual findings. *In re Bennett Estate*, 255 Mich App 545, 549; 662 NW2d 772 (2003). Its findings are clearly erroneous if this Court is definitely and firmly convinced that it made a mistake. *Id*.

We review de novo issues of statutory interpretation. *In re Casey Estate*, 306 Mich App 252, 256; 856 NW2d 556 (2014). If the plain and ordinary meaning of a statute's language is

---

[1] Umble is the only surviving paternal relative.

clear, we will enforce the statute as written. *Id.* We must consider the statute as a whole and in context, giving every word meaning and avoiding constructions that render parts of the statute surplusage. *Id.* at 257. We should not write into a statute provisions that the Legislature has not included. *Id.*

We review de novo the probate court's decision on a motion for summary disposition. *Id.* at 256. "A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of the claim as pleaded . . . ." *Id.* The probate court properly grants summary disposition if the moving party is entitled to judgment as a matter of law. MCR 2.116(C)(8). The probate court may grant summary disposition under MCR 2.116(I)(2) if "the opposing party, rather than the moving party, is entitled to judgment . . . ."

## III. BACKGROUND LAW

Bierkle asserts that the probate court clearly erred when it found that Carl Umble was the natural father of Carl Koehler. Whether Carl Umble was Carl Koehler's father for the purposes of EPIC is important in this case because it determines whether Umble can inherit as a paternal descendant. If Carl Umble was entitled to inherit from his child Carl Koehler, Umble is the only surviving descendant of Koehler's paternal grandparents and he is entitled to inherit half of Koehler's estate. Otherwise, Bierkle and the other descendants of Koehler's maternal grandparents will inherit the entire estate.

Article II, part 1 of EPIC governs rights to an intestate inheritance. *In re Certified Question*, 493 Mich 70, 76-77; 825 NW2d 566 (2012). Some basic definitions are necessary to understand the order of inheritance. EPIC defines "descendant" as "in relation to an individual, all of his or her descendants of all generations, with the relationship of parent and child at each generation being determined by the definitions of child and parent contained in this act." MCL 700.1103(k). EPIC defines a "parent" as "an individual entitled to take, or who would have been entitled to take, as a parent under this act by intestate succession from a child who dies without a will and whose relationship is in question." MCL 700.1106(*i*).

If a decedent dies intestate and has no surviving spouse, EPIC provides the order in which the decedent's estate will pass to his or her surviving relatives. MCL 700.2103. First, the estate will pass to the decedent's descendants. MCL 700.2103(a). If the decedent has no descendants, the estate will pass to the decedent's surviving parent or parents. MCL 700.2103(b). If the decedent has neither descendants nor surviving parents, the estate will pass to the descendants of the decedent's parents (the decedent's siblings, nieces, and nephews). MCL 700.2103(c).

If the decedent has no surviving descendants, parents, or descendants of parents, EPIC instructs the probate court to determine whether there are any descendants of the decedent's grandparents. MCL 700.2103(d). Half the decedent's estate passes to the decedent's paternal grandparents or their descendants, and half the decedent's estate passes to the decedent's maternal grandparents or their descendants. MCL 700.2103(d). Finally, "[i]f there is no surviving grandparent or descendant of a grandparent on either the paternal or the maternal side, the entire estate passes to the decedent's relatives on the other side in the same manner as the

1/2." MCL 700.2103(d). The burden of establishing heirship is on the petitioner. MCL 700.3407.[2]

Accordingly, if Carl Umble was entitled to inherit as Carl Koehler's parent, Umble is entitled to inherit half of Koehler's estate because he is the sole surviving descendant of Koehler's paternal grandparents. But if inheritance could not pass up to Carl Umble through his relationship with Carl Koehler, it cannot pass back down to Umble, and he is not entitled to a portion of the estate.

## IV. UMBLE'S RELATIONSHIP TO KOEHLER

EPIC provides that, generally, a child is the child of his or her natural parents even if they were not married:

> Except as provided in subsections (2), (3), and (4), for purposes of intestate succession by, through, or from an individual, an individual is the child of his or her natural parents, regardless of their marital status. . . . [MCL 700.2114(1).]

MCL 700.2114(1)(b) sets forth circumstances in which a man is considered to be the natural parent of a child when that child is conceived out of wedlock. In this case, the probate court proceeded under MCL 400.2114(b)(*v*). This subparagraph provides that:

> [r]egardless of the child's age or whether or not the alleged father has died, the court with jurisdiction over probate proceedings relating to the decedent's estate determines that the man is the child's father, using the standards and procedures established under the paternity act, . . . MCL 722.711 to 722.730.

Michigan's Paternity Act "was created as a procedural vehicle for determining the paternity of children born out of wedlock." *In re MKK*, 286 Mich App 546, 557; 781 NW2d 132 (2009) (quotation marks and citations omitted). The Paternity Act provides four ways in which a court may establish paternity by an order of filiation:

> (a) The finding of the court or the verdict determines that the man is the father.
>
> (b) The defendant acknowledges paternity either orally to the court or by filing with the court a written acknowledgement of paternity.
>
> (c) The defendant is served with summons and a default judgment is entered against him or her.
>
> (d) Genetic testing . . . determines that the man is the father. [MCL 722.717(1).]

---

[2] Pre-EPIC caselaw required the child-petitioner to show mutual acknowledgement to inherit. See *In re Scharenbroch Estate*, 191 Mich App 215, 216; 477 NW2d 436 (1991); *In re Jones Estate*, 207 Mich App 544, 548; 525 NW2d 493 (1994).

The party seeking to prove paternity must establish by a preponderance of the evidence that the man is the child's father. *Bowerman v MacDonald*, 431 Mich 1, 14; 427 NW2d 477 (1988).

This case did not involve a written acknowledgement of paternity, a default judgment, or genetic testing. Instead, the probate court relied on the documentary evidence that the parties presented at the bench trial. Bierkle specifically challenges the probate court's reliance on Carl Koehler's birth certificate, which listed Carl Umble as his father.

I agree with Bierkle that this birth certificate did not definitively establish that Carl Umble was Carl Koehler's father. But the statement on which Bierkle relies from the probate court's opinion is taken out of context. A full review of the probate court's opinion reveals that the probate court did not solely rely on the birth certificate. It was only part of the evidence that the court considered.

In its findings, the probate court specifically noted that Carl Umble was killed in a knife fight over Florence Koehler, Carl Koehler's mother; that a newspaper article and death certificate indicated that Carl Umble's mother was Grace Umble, and Carl Koehler's obituary listed his grandmother as Grace Roberts of Denver, Colorado; and that Carl Koehler's marriage certificate listed his father as "Carl Sedric Umble." Given the body of evidence and the lack of evidence that Carl Koehler's father was someone else, I am not definitely and firmly convinced that the probate court made a mistake when it found that a preponderance of the evidence supported that Carl Umble was Carl Koehler's father.

## V.  ACKNOWLEDGEMENT AND SUPPORT

That Carl Umble was Carl Koehler's natural father does not automatically mean that he is entitled to inherit through Carl Koehler. Bierkle contends that the probate court erred when it determined that MCL 700.2114(4) cannot apply in circumstances where the parent dies before the child is born. Bierkle also contends that MCL 700.2114(4) bars Umble from inheriting as a matter of law because it is impossible for a natural parent to acknowledge or support an afterborn child. I agree in part. I conclude that the probate court erred when it concluded that MCL 700.2114(4) can only apply in cases involving living parents, but I conclude that it does not bar Umble from inheriting as a matter of law.

### A.  STATUTORY LANGUAGE

The probate court denied Bierkle's motion for summary disposition because it accepted Umble's argument that the exception in MCL 700.2114(4) could not apply in this case.

As noted above, EPIC also provides "*[e]xcept as provided in subsections (2), (3), and (4),* for purposes of intestate succession by, through, or from an individual, an individual is the child of his or her natural parents, regardless of their marital status. . . ." MCL 700.2114(1) (emphasis added). Subsection 4 provides that:

> [i]nheritance from or through a child by either natural parent or his or her kindred is precluded unless that natural parent has openly treated the child as his or hers, and has not refused to support the child. [MCL 700.2114(4).]

To accept Umble's argument that MCL 700.2114(4) cannot apply in this case is to essentially write an additional condition into MCL 700.2114(4), a clause that would read "unless the child is an afterborn child." This Court does not read clauses into unambiguous statutory language. *Casey Estate*, 306 Mich App at 257. However, the probate court accepted Umble's argument, concluding that MCL 700.2114(4) did not apply in such cases because it would be impossible for the predeceased parent to comply and other statutory sections allow for inheritance through predeceased parents. I conclude that the probate court erred when it decided that MCL 700.2114(4) does not apply to cases involving afterborn children.

If the language of the statute is unambiguous, we must enforce the statute as written. *Casey Estate*, 306 Mich App at 256. We should not read language into an unambiguous statute. *McCormick v Carrier*, 487 Mich 180, 209; 795 NW2d 517 (2010). A statute is ambiguous only if it irreconcilably conflicts with another provision or it is equally susceptible to more than a single meaning. *Mayor of the City of Lansing v Pub Serv Comm'n*, 470 Mich 154, 166; 680 NW2d 840 (2004).

The probate court implicitly found that MCL 700.2114(4) is ambiguous when it reasoned that applying this subdivision in cases involving afterborn children would conflict with other sections of EPIC. Specifically, the probate court cited MCL 700.2114(3), MCL 700.2104, MCL 700.2107, and MCL 700.2108 as conflicting provisions. I will analyze each of these statutory sections in turn.

MCL 700.2114(3) provides that a termination of parental rights precludes a parent from inheriting:

The permanent termination of parental rights of a minor child by an order of a court of competent jurisdiction; . . . or by any other process recognized by the law governing the parent-child status at the time of termination, excepting termination by emancipation or death, ends kinship between the parents whose rights are so terminated and the child for purposes of intestate succession by that parent from or through the child.

By its plain language, MCL 700.2114(3) applies to actions terminating parental rights. While MCL 700.2114(3) recognizes that death does not terminate a parental relationship, this has no bearing on the operation of MCL 700.2114(4). MCL 700.2114(4) does not terminate the parental relationship by death, it precludes inheritance if the parent did not acknowledge or refused to support the child. Not only does this case not involve termination of parental rights or any law governing parent-child status *at the time of termination*, but even in a case that did, I am unable to determine any ways in which these sections irreconcilably conflict. I conclude that this subsection does not conflict with MCL 700.2114(4).

MCL 700.2104 provides that "an individual who fails to survive a decedent by 120 hours is considered to have predeceased the decedent for purposes . . . of intestate succession . . . ." This section concerns the death of the child, not the parent, and it does not touch on the parent-child relationship at all. This section would not irreconcilably conflict with MCL 700.2114(4) even if both the decedent and unborn child died within 120 hours of each other. I conclude that these sections do not conflict.

MCL 700.2107 provides that "[a] relative of the half blood inherits the same share he or she would inherit if he or she were of the whole blood." Nothing in MCL 700.2114(4) contradicts this section. MCL 700.2114(4) is only concerned with whether a natural father acknowledged or refused to support a child. That child's blood relationship to other children is not at issue. These sections do not conflict.

MCL 700.2108 provides that "[a]n individual in gestation at a particular time is treated as living at that time if the individual lives 120 hours or more after birth." Rather than conflicting, this actually supports the application of MCL 700.2114(4) in cases where the natural parent predeceases the child. It instructs the probate court to treat an afterborn child as though it was living child at the time of the parent's death. This section does not conflict with MCL 700.2114(4), which does not by its language exclude afterborn children from consideration. I conclude that these sections do not conflict.

I conclude that the probate court erred by reading language into MCL 700.2114(4) to exclude afterborn children. This section is not ambiguous because it does not conflict with other sections of EPIC. I recognize that applying MCL 700.2114(4) in cases involving afterborn children may be difficult. But that the statute appears to be inconvenient, is not a reason for this Court to avoid applying plain statutory language. *Johnson v Recca*, 492 Mich 169, 187; 821 NW2d 520 (2012). Accordingly, I conclude that MCL 700.2114(4) applies in all cases of intestate succession from a child to a natural parent, not exclusive of afterborn children.

However, this does not mean that Bierkle is correct that Umble's claim is barred as a matter of law. Bierkle's argument is premised on the presumption that a natural father cannot acknowledge or support an afterborn child. I reject this presumption and conclude that the probate court did not err by denying Bierkle's motion for summary disposition.

As previously discussed, under MCL 700.2108, the probate court should consider the afterborn child of a predeceased father as though it were a living child at the time of his death. I therefore conclude that under MCL 700.2114(4), the probate court must determine whether the predeceased natural father failed to acknowledge or refused to provide support to the unborn child at the time of the father's death. Accordingly, this issue cannot be resolved as a matter of law.

## B. PERSUASIVE AUTHORITY

Additionally, because this is an issue of first impression in Michigan, this Court may consider cases from other jurisdictions as persuasive. See *In re Turpening Estate*, 258 Mich App 464, 466; 671 NW2d 567 (2003). Other jurisdictions hold that a natural father can acknowledge and provide support for a child even if the child dies before its birth. While this factual scenario is not directly analogous to a case involving an afterborn child, the crux of the argument—that it is impossible for the natural parent to acknowledge and support the child—is the same in both factual scenarios.

In *In re Estate of Poole*, 328 Ill App 3d 964; 263 Ill Dec 129; 767 NE2d 855 (2002), the Appellate Court of Illinois considered a case in which the acknowledged biological father of a fetus that was stillborn could inherit through the child. In that case, the Third District Appellate

Court of Illinois considered whether statutory language providing that a father could not inherit through an illegitimate child unless the father, during the child's lifetime, acknowledged the child, established a parental relationship with the child, and supported the child. *Id.* at 969. The maternal relatives in *Poole* argued that the father was not eligible to inherit because the child did not have a lifetime and so the father could not acknowledge, support, or establish a relationship with her. *Id.* The court determined that the father could qualify as an eligible parent because he resided with the child's mother throughout the pregnancy, provided financial and emotional support to the mother and through her to the unborn child, and held himself out as the child's father. *Id.* at 970.

Similarly, in *Williams v Farmer*, 2002 CA 02094 SCT; 876 So 2d 300 (Miss, 2004), the Supreme Court considered a statute that provided that a father could not inherit through an illegitimate child unless the father openly treated the child as his own and had not refused or neglected to support the child. The father in *Williams* argued that this statute did not apply when his unborn child died in a car accident because it was impossible for him to comply with the statutory requirements. *Id.* at ¶ 8-9, 20. The court found that the statute did apply because the father could acknowledge the fetus and provide support for it during the pregnancy. *Id.* at ¶ 23. The court barred the father from inheritance because he had no contact with the child's mother while she was pregnant, and "did not contribute any support, financial or otherwise" to the mother during or after the pregnancy. *Id.* at ¶ 26.

I find these cases persuasive. They establish that, in other states with similar statutes, courts have found that it is not *impossible* for a natural father to acknowledge and support an unborn child.

## C. APPLICATION

In this case, the proofs are complicated by the passage of time. Carl Umble died in 1931. However, circumstantial evidence and inferences from the evidence may support the probate court's findings. See *Kupkowski v Avis Ford, Inc*, 395 Mich 155, 166; 235 NW2d 324 (1975) (holding circumstantial evidence and reasonable inferences sufficient to provide proof in a civil case).

Considering acknowledgment, the present state of the law in Colorado is that a father must consent to be placed on the child's birth certificate to be named a father on the birth certificate. See CRS § 19-4-105(1)(c)(III). There is no evidence regarding the state of the law in Colorado at the time of Carl Koehler's birth, but if similar laws existed, the fact that Carl Umble is listed on Carl Koehler's birth certificate might provide evidence of acknowledgment. If the child was acknowledged in Carl Umble's obituary, that too may be additional evidence.

I also note that there are no prescribed ways in which a father must support the child. See *Turpening Estate*, 258 Mich App at 468. The language of MCL 700.2114(4) states that this section applies if the parent *refused* to support the child. There must be some evidence of a refusal to support on the part of the natural parent. For instance, if another relative asked the natural father to support the child's mother but the father denied that the child was his, this may be evidence of refusing to support the child. See *Id.* at 468. Similarly, a natural father's lack of involvement in a pregnancy of which he was aware could provide circumstantial evidence to

support an inference that the father refused to support the child. In contrast, if a natural father supported the unborn child by supporting its mother through the pregnancy or made provisions for familial support, this may be evidence that the predeceased father did in fact support the child. I note that a newspaper article provides evidence that Carl Umble was involved in an ongoing relationship with Koehler until his death, to the point of striking a man who was kissing her and getting into a fatal knife fight. I do not decide whether the evidence is sufficient to support an inference or finding on this point— I simply note that evidence may exist.

Because the probate court determined that MCL 700.2114(4) did not apply in this case, it did not receive evidence on either of these requirements. I would remand for additional proceedings.

## VI.  CONCLUSION

It may be difficult for the predeceased natural father of a child born out of wedlock to comply with MCL 700.2114(4), but the statute is not ambiguous, and the proofs are not impossible. MCL 700.2114(4) applies in cases involving the predeceased natural fathers of afterborn children. In such cases, the probate court must determine (1) whether the man was the child's natural father, (2) whether the father acknowledged the unborn child, and (3) whether the father refused to support the unborn child.

I would reverse the probate court's determination that MCL 700.2114(4) did not apply in this case and remand for further proceedings.

/s/ Peter D. O'Connell

-10-