# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* Estate of JAMES ERWIN, SR.

---

BEATRICE KING, Individually and as Personal Representative for the Estate of JAMES ERWIN, SR.,

        Appellant,

v

JACQUELINE E. NASH, BILLY J. ERWIN, DEMARKIUS ERWIN, MAGGIE ERWIN, and STACY ERWIN OAKES,

        Appellees.

UNPUBLISHED
May 10, 2016

No. 323387
Saginaw Probate Court
LC No. 13-130558-DE

---

*In re* Estate of JAMES ERWIN, SR.

---

BEATRICE KING,

        Appellant,

v

JACQUELINE E. NASH, BILLY J. ERWIN, DEMARKIUS ERWIN, MAGGIE ERWIN, STACY ERWIN OAKES, and DOUGLAS TAYLOR,

        Appellees.

No. 329264
Saginaw Probate Court
LC No. 13-130558-DE

---

Before: HOEKSTRA, P.J., and O'CONNELL and MURRAY, JJ.

PER CURIAM.

-1-

James Erwin, Sr. died intestate on October 12, 2012. He was survived by his spouse, Maggie Erwin, and 10 children: six children from his first marriage and four children from his second marriage to Maggie. These consolidated appeals involve a heated dispute over the assets remaining in his estate. The primary issue in Docket No. 323387 concerns whether Maggie, who did not physically live with Erwin, is a surviving spouse for the purposes of the Estates and Protected Individuals Code (EPIC), 700.1101 *et seq*. In Docket No. 329264, King (James's daughter) appeals her removal as personal representative of the estate. Because we conclude that the trial court did not err, we affirm in both appeals.

## I. FACTUAL BACKGROUND

James and Maggie were married in 1968. In February 1973, they purchased a house in Saginaw as tenants by the entireties. However, it is undisputed that Maggie and James did not live together after 1976, and in February 1976, Maggie petitioned the Saginaw Circuit Court for support for herself and her four children.

In 2010, James and Maggie jointly sued General Motors for breach of contract. In their complaint, James and Maggie asserted that Maggie was James's spouse, that they were married in 1968 and remained married at the time of the complaint, and that "the life of Maggie Erwin . . . would be irreplaceable for her husband . . . ." Maggie was also the beneficiary of James's life insurance policy.

In June 2013, Beatrice King, James's eldest daughter from his first marriage, petitioned the probate court to appoint her personal representative of Erwin's estate. King stated that some of James's heirs had denied her access to James's house. The probate court accepted King's appointment as personal representative.

After the initial probate court judge disqualified himself from the case, the State Court Administrator's Office assigned the matter to Judge Nancy L. Thane. Attorneys for Nash, King, and Maggie agreed to hold hearings in the Tuscola Probate Court for the convenience of Judge Thane, but venue for the case remained in Saginaw County. The trial court held hearings in Tuscola County. It ultimately determined that, because there were indications that James and Maggie had contact and an ongoing relationship during their separated years, Maggie had not willfully abandoned James for the purposes of MCL 700.2801(2)(e). The trial court specifically relied on statements made during their 2010 lawsuit.

In November 2014, Maggie sought funeral reimbursements from the estate, which the estate denied. Maggie petitioned to remove King as the estate's personal representative. Maggie attached to her petition an affidavit in which Stanley Roberts stated he observed Nash removing coins and a note of indebtedness from a safe in James's residence. Stacey Erwin Oakes, a daughter of James and Maggie's, also filed a brief in support of Maggie's petition. Erwin requested an accounting, which prompted a hostile email exchange between the parties' attorneys. Nash ultimately refused to provide an accounting. The trial court found that it was in the best interests of the estate to have a neutral person acting as personal representative, and it appointed a new personal representative for the estate.

## II. SURVIVING SPOUSE

## A.  STANDARDS OF REVIEW

This Court reviews for clear error a probate court's findings of fact and reviews de novo issues of statutory interpretation.  *In re Townsend Conservatorship*, 293 Mich App 182, 186; 809 NW2d 424 (2011).  A finding is clearly erroneous if this Court is definitely and firmly convinced that the trial court made a mistake.  *Id*.

When engaging in statutory interpretation, if the plain and ordinary meaning of a statute's language is clear, we will not engage in judicial construction.  *In re Kubiskey Estate*, 236 Mich App 443, 449; 600 NW2d 439 (1999).  We must enforce unambiguous statutes as written.  *Id*. at 448.  When interpreting a statute, our goal is to give effect to the intent of the Legislature.  *Id*. We construe words and phrases in accordance with their commonly understood meanings. *Townsend*, 293 Mich App at 187.

## B.  LEGAL BACKGROUND

Article II, part 1 of the EPIC governs rights to an intestate inheritance.  *In re Certified Question*, 493 Mich 70, 76-77; 825 NW2d 566 (2012).  If a decedent dies intestate and has no surviving spouse, the EPIC provides the order in which the decedent's estate will pass to his or her surviving relatives.  MCL 700.2101.  The decedent's surviving spouse is entitled to a share of a decedent's intestate estate.  MCL 700.2102.  But not all spouses are entitled to a share.  See MCL 700.2801.  For the purposes of intestate succession, a spouse who ceased supporting the decedent spouse before his or her death may not take a share from an intestate estate:

> . . . [A] surviving spouse does not include any of the following:
>
> * * *
>
> (e) An individual who did any of the following for 1 year or more before the death of the deceased person:
>
> (*i*) Was willfully absent from the decedent spouse.
>
> (*ii*) Deserted the decedent spouse.
>
> (*iii*) Willfully neglected or refused to provide support for the decedent spouse if required to do so by law.  [MCL 700.2801(2)(e).]

## C.  INTERPRETATION

King contends that the trial court erred when it found that Maggie was a surviving spouse entitled to a share of James's estate.  King contends that because James and Maggie did not live together, Maggie was "willfully absent from" James by definition.  We disagree and conclude that willful absence for the purposes of the EPIC is a factual question that may concern more than physical proximity.

The EPIC does not define willful absence under MCL 700.2801(2)(e)(*i*).  Where a statute does not define a specific term, we may consult a dictionary to ascertain the word's common and

-3-

ordinary meaning. *Krohn v Home-Owners Ins Co*, 490 Mich 145, 156; 802 NW2d 281 (2011). When used as a transitive verb (i.e., in the sense of a person being absent from another person, which is the usage in the statute in question), the dictionary defines "absent" as "to keep (oneself) away." *Merriam-Webster's Collegiate Dictionary* (11th ed). In this sense, consulting a dictionary is not particularly helpful. It simply does not answer the manner in which the spouse must keep the other spouse away: whether the distance must be physical, emotional, or some combination thereof.

Fortunately, we have other tools of interpretation at our disposal. When engaging in statutory interpretation, we must read the statute as a whole. *In re Casey Estate*, 306 Mich App 252, 257; 856 NW2d 556 (2014). We read the provisions of statutes in context and read subsections of cohesive statutory provisions together. *Id.*

Reading the willful absence provision in context with the desertion and willful neglect provisions, it is clear that the provisions include some level of intent as well as physical distance. When used as a verb, to "desert" means "to withdraw from or leave usu. without intent to return." *Merriam-Webster's Collegiate Dictionary* (11th ed). To "neglect" means "to give little attention or respect to" or "to leave undone or unattended to esp. through carelessness." *Id.* There is no indication that the Legislature intended any of the terms in this section to apply in cases of sole physical separation.

Case law supports this interpretation. Considering the language of the now-repealed MCL 700.290, which was different from the language of MCL 700.2801 in only minor ways, this Court determined that the similarly worded statute encompassed "emotional as well as physical absence from or desertion of the decedent spouse." *In re Harris Estate*, 151 Mich App 780, 785; 391 NW2d 487 (1986). In that case, this Court reasoned that "[p]hysical presence in the marital home is strong evidence that the party remains involved in the marriage to some degree . . . ." *Id.* at 786. However, the Court also considered the party's intent in ending the marriage, stating that the party seeking to establish the spouse was a non-surviving spouse must show "actions indicating a conscious decision to permanently no longer be involved in the marriage." *Id.* While a party's presence in the marital home is one part of a fact-based analysis, physical presence was not the sole legal consideration. Because the statutory language involved in that case bore only minor distinctions from the language involved in this case, we find this opinion persuasive.

In *Tkachik v Mandeville*, 487 Mich 38, 40-41; 790 NW2d 260 (2010), the Michigan Supreme Court considered a case of equitable contribution in which the husband frequently left the country and was absent for the 18 months before the decedent wife's death. The husband knew that the wife was seriously ill, but did not attempt to call or communicate with her, and he did not attend her funeral. *Id.* at 41. The decedent wife executed a trust and will that disinherited the husband. *Id.* at 42. Although we recognize that the Michigan Supreme Court was not construing MCL 700.2801, it noted that the trial court deemed the husband a non-surviving spouse under MCL 700.2801(2)(e)(*i*). *Id.* at 42-43, 57. The fact-specific inquiry in *Tkachik* supports that spousal relationships are best viewed as factual questions.

For these reasons, we conclude that the trial court should determine whether a spouse is willfully absent from the decedent spouse under MCL 700.2801(2)(e)(*i*) by considering all the

-4-

facts and circumstances of the case. A physical separation may provide factual support for a determination that one spouse was willfully absent from another, but it does not necessarily preclude a spouse as a surviving spouse under MCL 700.2801(2)(e)(*i*). A physical separation is only one piece of evidence that the trial court may consider and weigh when determining whether one spouse was willfully absent from another.

We note that this construction avoids several practical concerns. If MCL 700.2801(2)(e)(*i*) precluded inheritance solely on the basis of physical absence, what about spouses whose jobs, pursuit of education, or family situations require them to live for extended periods of time in another part of the country, or in a foreign country? A spouse who moves to a foreign country to assist a parent during his or her declining years? A spouse who must seek medical treatments in a distant state and who, unlike the circumstances presented in *Tkachik*, decide to live apart for convenience or to avoid taking joint children out of school? Under King's proposed interpretation, even if these spouses remained emotionally intimate, the mere fact that they chose not to live in a joint household would legally sever them from inheritance. These scenarios should not be resolved as a purely legal matter, and the language of the statute does not require it.

## D. APPLICATION

In this case, it is undisputed that James and Maggie did not live as a single household after 1976. King presented three affidavits supporting that James and Maggie had not cohabitated since 1976.[1] However, their physical separation did not operate to foreclose a continued emotional intimacy. Maggie presented evidence that as late as 2010, more than 30 years after their physical separation, James considered he and Maggie still married and stated that Maggie's life was "irreplaceable."[2] While the record is sparse in this case, the burden was on King to establish that Maggie was not a surviving spouse. See *In re Koehler Estate*, ___ Mich App ___, ___; ___ NW2d ___ (2016) (stating the burden is on the party asserting an exception to establish it). King did not do so. We are not definitely and firmly convinced the trial court made a mistake when it found that Maggie was entitled to inherit as James's surviving spouse.

We also reject King's assertion that the trial court was required to hold an evidentiary hearing in this matter. The trial court may hear a contested motion on the basis of affidavits presented by the parties. MCR 2.119(E)(2). Whether to do so is within the trial court's discretion. See *Williams v Williams*, 214 Mich App 391, 399; 542 NW2d 892 (1995). However,

---

[1] These affidavits did not remark on the existence of emotional intimacy, but instead concerned only whether James and Maggie cohabitated.

[2] Even if the court's brief statement that Maggie provided James with care "at some point in time" was a reference to Jacqueline Nash's unsworn statement that James lived with Maggie for a week after he was released from the hospital was improper, any reference was exceedingly brief. It is clear from the trial court's opinion that it primarily based its findings on their joint lawsuit in 2010.

the trial court should hold an evidentiary hearing if the motion requires resolution of credibility issues. *Id*; also see *Kiefer v Kiefer*, 212 Mich App 176, 179-180; 536 NW2d 873 (1995).

In this case, the trial court decided the motion on the basis of the documentary evidence and affidavits the parties attached to their respective motions. Both parties were permitted to submit evidence and respond to the other party's arguments, and both parties did so. Resolution of the issue did not involve credibility determinations. We are not convinced that the trial court's decision to decide the motion on the basis of documentary evidence and affidavits fell outside the range of principled outcomes.

### III. ENTIRETIES PROPERTY

King contends that the trial court erred when it found that Maggie should not be required to pay contribution to the estate regarding the property that James and Maggie held as tenants by the entireties. We disagree.

This Court reviews de novo application of an equitable doctrine to a case. *Tkachik*, 487 Mich at 44-45. We review for an abuse of discretion the trial court's ultimate decision whether to grant or deny equitable relief. *Id*. at 45. We review for clear error its findings of fact supporting its determinations. *Samuel D Begola Servs, Inc v Wild Bros*, 210 Mich App 636, 639; 534 NW2d 217 (1995).

Under a tenancy by the entirety, "one tenant . . . has no interest separable from that of the other." *Long v Earle*, 277 Mich 505, 517; 269 NW 577 (1936). Each tenant has a right of survivorship. *Tkachik*, 487 Mich at 46. The doctrine of contribution provides that when one person has borne more than his or her share of a cotenant property, the other tenants may be required to contribute. *Id*. at 47. And the theory of unjust enrichment provides that a person may not retain money or benefits that, through justice or equity, rightfully belong to another. *Id*. at 47-48. Together, these doctrines may provide that a party may be unjustly enriched by acquiring property held as tenants by the entireties if he or she was equitably required to contribute to the upkeep of that property but did not. *Id*. at 49. However, whether contribution is appropriate depends on the facts and circumstances of each case. *Id*. at 57.

In *Tkachik*, the Michigan Supreme Court considered several "special circumstances" when concluding that equity allowed the wife's estate to sue the husband for contribution. *Id*. These circumstances included that the decedent wife had sole financial responsibility for care of the property while there was no contact between the spouses, the wife disinherited the husband from her will, the wife diligently sought the property, and the husband was a non-surviving spouse for the purposes of the EPIC. *Id*. It concluded that applying the doctrine of contribution was permissible under those facts. *Id*.

In this case, James did solely maintain the property. However, there was evidence that James provided Maggie with financial support and no evidence that he sought sole ownership of the property. James also did not seek to disinherit Maggie—to the contrary, he made no will and she remained a named beneficiary on his life insurance policy. There is no evidence that the parties failed to communicate. Finally, the trial court determined that Maggie was a surviving spouse under the EPIC. We are not definitely and firmly convinced that the trial court erred

when it made findings supporting its determination, and we conclude that the trial court's decision not to apply the equitable doctrine of contribution was within the principled range of outcomes.

## IV. REMOVAL OF PERSONAL REPRESENTATIVE

### A. STANDARD OF REVIEW

We review the trial court's decision to remove a personal representative for an abuse of discretion. *In re Kramek Estate*, 268 Mich App 565, 575; 710 NW2d 753 (2005). The trial court abuses its discretion when its outcome falls outside the principled range of outcomes. *In re Temple Estate*, 278 Mich App 122, 128; 748 NW2d 265 (2008).

### B. STANDING

King contends that the trial court erred by removing King as personal representative of James's estate because Maggie did not have standing to petition to remove her. We disagree.

An interested person may petition to remove a personal representative for cause at any time. MCL 700.3611(1). An interested person includes a spouse. MCL 700.1105(c).[3] Because Maggie was James's spouse, she had standing to petition to remove King as personal representative of James's estate.

### C. REMOVAL

King also contends that the trial court erred by removing King as personal representative because the trial court had no basis for removal. We disagree.

The trial court may remove a personal representative for a variety of circumstances:

> (2) The court may remove a personal representative under *any* of the following circumstances:

> (a) Removal is in the best interests of the estate.

> (b) It is shown that the personal representative or the person who sought the personal representative's appointment intentionally misrepresented material facts in a proceeding leading to the appointment.

> (c) The personal representative did any of the following:

---

[3] This section uses the general term "spouse," not the specific term "surviving spouse." We presume that the omission of language that is included in another part of the same statute is intentional. *Ernsting v Ave Maria College*, 274 Mich App 506, 513; 736 NW2d 574 (2007). Whether Maggie was entitled to inherit as a surviving spouse was irrelevant to whether she had standing to petition for King's removal as personal representative.

(*i*) Disregarded a court order.

(*ii*) Became incapable of discharging the duties of the office.

(*iii*) Mismanaged the estate.

(*iv*) Failed to perform a duty pertaining to the office. [MCL 700.3611 (emphasis added).]

A dispute or disagreement alone is not a sufficient basis to remove a personal representative. *Kramek*, 268 Mich App at 576. However, disagreement may rise to the level of implicating the best interests of the estate when it complicates the dispute or causes the estate to be unduly burdened. See *id*. at 577.

In this case, the record is replete with familial conflict. While disagreement alone is no basis to remove a personal representative, the conflict extended to the personal representative's performance of statutory duties when King refused to provide an accounting at Erwin Oakes's request.[4] We conclude that the trial court's decision to remove King as personal representative and replacing King with a neutral third party was an outcome within the principled range of outcomes.

## V. VENUE AND DISQUALIFICATION

As an initial matter, we note that King's issues regarding venue and disqualification are not properly before this Court. This Court has jurisdiction to hear appeals as of right from final orders or orders in which an appeal of right is provided for by statute or court rule. MCR 7.203(A). The orders in this case are not final orders, and our court rules do not provide for appeals of right from either decisions regarding venue or disqualification. See MCR 5.801(B). King is not entitled to an appeal of right on these issues. However, in the interests of judicial economy, we exercise our discretion to treat King's appeal as an application for leave to appeal, grant leave, and address the issues presented. See, e.g., *Wardell v Hincka*, 297 Mich App 127, 133 n 1; 822 NW2d 278 (2012).

First, King contends that the trial court improperly refused to change venue. We disagree.

We review for an abuse of discretion the trial court's resolution of questions of venue. *Shock Bros, Inc v Mobark Indus, Inc*, 411 Mich 696, 698; 311 NW2d 722 (1981). Among other reasons, the trial court may order venue changed in an estate proceeding for the convenience of the parties, witnesses, and attorneys. MCL 700.3201; MCR 5.128. In this case, King moved to change venue more than 18 months after commencement of the action and after King consented regarding holding hearings in Tuscola County. We conclude that the trial court's decision to deny King's motion did not fall outside the range of principled outcomes.

---

[4] See MCL 700.3703(4) and MCL 700.3706.

-8-

Second, King contends that the trial court improperly refused to disqualify itself on the basis of judicial bias. Again, we disagree.

We review for an abuse of discretion the trial court's factual findings supporting its decision on disqualification and review de novo its application of the facts to the law. *Cain v Dep't of Corrections*, 451 Mich 470, 494-495; 548 NW2d 210 (1996). "Due process requires that an unbiased and impartial decision-maker hear and decide a case." *Mitchell v Mitchell*, 296 Mich App 513, 523; 823 NW2d 153 (2012). A judge must be disqualified when he or she cannot hear a case impartially, including when the judge is personally biased or prejudiced against a party. *Cain*, 451 Mich at 494-495. The party who alleges that a judge is biased must overcome the heavy presumption in favor of judicial impartiality. *Id.* at 497. Judicial rulings almost never constitute a valid basis for bias, unless the judicial opinion displays "a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* at 503 (quotation marks and citation omitted).

In this case, even presuming that the trial court on one occasion allowed Maggie's counsel to participate over the phone at a hearing after failing to extend the same courtesy to King's counsel on another occasion, this single action did not display the type of deep-seated favoritism that would demonstrate judicial bias, particularly when the trial court did not extend the courtesy to Erwin Oakes's counsel, who had supported Maggie's motions in the controversy, on other occasions. And the trial court's rulings against King had sound legal bases and did not demonstrate bias. We conclude that the trial court did not abuse its discretion by denying King's motion for disqualification.

We affirm. The prevailing parties may tax costs. MCR 7.219(A).

/s/ Joel P. Hoekstra
/s/ Peter D. O'Connell
/s/ Christopher M. Murray